Morton W. SOUTHARD and James L. Hansberger, individually and as Partners doing business in the firm name of H & L Supply, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14326.

United States Court of Appeals, Ninth Circuit.

Jan. 7, 1955.

Ben Gould, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Lelia F. Bulgrin, Max F. Deutz, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, Circuit Judge, SAMES and McLAUGHLIN, District Judges.

CHAMBERS, Circuit Judge.

The government below obtained a judgment against Morton W. Southard and James L. Hansberger, partners, doing business as H & L Supply, for $3,459.44 and interest. The total is the sum of two invoices in the respective amounts of $228.13 and $3,231.31 for steel items sold by the War Assets Administration to someone in the Long Beach, California area in 1947.

The date of the formation of the partnership is obscure. H & L Steel Company, Inc., a California corporation, was formed apparently late in 1946.[1] Hansberger and Southard seem to have been the principal ones in interest, if not the only ones in both concerns. H & L Supply mainly handled oil well supplies and H & L Steel Company, Inc., seems to have dealt in miscellaneous steel. (Hereinafter, for convenience, the former is referred to as the "supply company", even though it was unincorporated, and the latter is referred to as the "steel company".) The supply company had a yard at 1300 E. Burnett Avenue, Long Beach, where Hansberger seems to have been the one generally in charge; and the steel company had a yard two miles away on Wardlow Street, where Southard was the general manager and ordinarily operated. By the time of the trial, the steel company was insolvent and had made an assignment for the benefit of creditors.

The government named the steel company as one defendant, and Hansberger and Southard, doing business as H & L Supply, as other defendants. The steel company did not defend and judgment by default went against it for $9,986.68 plus interest and costs. It is assumed that the judgment for $9,986.68 includes within it the sum of $3,459.44 ordered paid by the supply company partners. The steel company is not a party on the appeal.

The government's complaint with reference to the sale was simply stated:

"The defendants owe the plaintiff $9,986.68 for goods sold and delivered to them during the years 1946 and 1947 by the plaintiff, acting by and through the War Assets Administration (Los Angeles Regional Office), a disposal agency for plaintiff's war surplus material under the Surplus Property Act of 1944, as amended. Said goods are particularly described in Sales Documents Nos. 4446369, 4446365, 497-4216, 4446300, 3432849, 3432875, 4457167, 4457169, 4457168, 446365, 3432874, 3432873, *1841647* and *445-7200* of said Regional Office, copies of which were issued to and furnished defendants at the times of sale." (Emphasis supplied on the two sales document numbers upon which judgment was obtained against the supply company partners.)

Upon the trial, the government could produce nothing except documents of the War Assets Administration concerning the two sales which were made to and delivered either to the supply company or the steel company.

The documents were offered and received in evidence under 28 U.S.C. § 1733, which reads as follows:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

---

1. Hansberger testified that the corporation was formed for the purpose of buying surplus materials from the War Assets Administration.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

The two sales documents of War Assets on transaction No. 1,841,647 for $228.13 for tubing and No. 4,457,200 for $3,231.31 for steel angles relate: "Sold to: H & L Supply Co., 1300 Burnett Ave., Long Beach, California". The delivery order on the larger item indicates receipt of the merchandise in the following manner:

"H & L Supply

By Jack M. McGill"

McGill testified that "H & L Supply" was not in his handwriting but it may have been written there before he signed, or it may not have been. On the smaller order, the receipt was signed

"H & L Steel Co.

By Jack McGill"

This, of course, was a variance from the contemporary listing of the purchaser as H & L Supply Co.

McGill was a truck driver and yardman who worked almost exclusively for H & L Steel Co. Rarely, he did some work for the supply company. It was he who went to the War Assets yard, took delivery, and trucked the items to the steel company (not the supply company) yard.

■ The supply company particularly objected to the sales documents on No. 4,457,200, the larger transaction, for the reason that the document contained a box or rectangle made by the printer designated "Contract or P. O. No. ......", "P. O." meaning "purchase order". In the blank was written, "See attached". The supply company, appellants herein, say there being no attachments to the documents at time of trial, the document was incomplete, and therefore inadmissible. Appellants' position would be well

taken if they could show some requirement by regulation, rule or something that the purchase order be attached. Two documents not being required to make the sales instrument an instrument, the proposition seems indistinguishable from the other order where it read "Contract or P. O. No. *08979*", where there was no attachment. Even if the "Contract or P. O." blank had been left blank, could it be gainsaid that the documents were admissible?

But what of the matter of delivery? If actual delivery to an authorized representative of H & L Supply must be proved, and the delivery has to stand on the picking up of the merchandise and the signing therefor by Jack McGill, there is either a failure of proof or almost a failure of proof by the government.

This court perhaps takes a slightly different view concerning the documents but arrives at about the same result as the trial court. In the series of documents on each of the two transactions was one entitled, "Sales Document, Copy No. 3—Accounts Receivable, War Assets Administration". Each lists the sale date, H & L Supply Co., 1300 Burnett Avenue, Long Beach, California, as purchaser, recites the terms as "30 days net", lists the items sold and their purchase price.

■ Almost everywhere common law rules on admissibility of a merchant's books have been superseded by statutes.[2] Generally, if the entries are contemporaneous with the transactions thereby recorded they are admissible. Here in Southard, the federal statute, Section 1733, governs and the problem is one of determining the effect thereof. Of course, reason and analogy can be sought in state rulings. Generally, a merchant's books are admissible to prove a sale.[3] But what if delivery is put in issue in a case? Are a merchant's books admissible to prove delivery?[4] Are gov-

2. See 28 U.S.C. § 1732 which governs the admission of private records in United States courts.

3. Kamm v. Rees, 9 Cir., 177 F. 14, 23.

4. White v. Hurlbut Grocery Co., 62 Colo. 483, 162 P. 1143.

ernment records admissible for the same purpose? This court believes that the following rule should be applied to sales documents of government agencies when the documents are offered under Section 1733. The sales documents will make a prima facie case for sale and delivery which will be sufficient alone to draw an issue for the government in a contested case unless the documents are self vitiating. That is, there must be nothing on the face of the documents which throws doubt on the sale or delivery having been made; otherwise, the prima facie case is not made by the documents alone.

■ Applying that test to sale documents for No. 4,457,200, the transaction for steel angles in the amount of $3,231.31, where the delivery receipt reads "H & L Supply, by Jack M. McGill", the document contains nothing inconsistent with a sale and delivery to H & L Supply Co., and the fact of his agency need not be otherwise proved. Therefore, the documents should be held to make an abiding prima facie case.

As to the smaller sale, No. 1,841,647 for $228.13 of steel tubing, the receipt reads "H & L Steel Co. by Jack McGill". Within the four corners of the instrument a doubt is thrown upon delivery to the purchaser. It is suggested that if the sale documents had shown an entry of "Deliver to H & L Steel Co.", or if the delivery record were signed merely by "Jack McGill, Driver", or by some known trucking Company, the documents would not on their face open up a question of delivery to the named purchaser; therefore, there would be a prima facie case.

■ Accordingly, it would seem that as to the second or smaller sale, the government failed to make a prima facie case of delivery (delivery being in issue) at the time the government closed its case. But the defendants went ahead and put in a defense on both sales. The defendant, Hansberger, testified that H & L Supply never bought anything from War Assets after the steel company was organized and he brought the books of the steel company to prove that the steel company made the purchases. Here it appears that there was a situation where the trial judge was entitled to disbelieve Hansberger. The trial judge just may have thought the documents more reliable. The foregoing is said in the light of his actual testimony and what his demeanor on the stand may have been. Of the latter this court can know little. The trial court, therefore, if it chose, was free to let the prima facie case on the sale for $3,231.31 stand and render judgment for the plaintiff.

As to the smaller sale of $228.13, it is doubtful if the defendant Hansberger's testimony was so ridiculous that it could be said that mere ridiculousness sustained the affirmative burden of proof for the government.

In the instant case, it may be said that when one receipt is signed "H & L Supply, by Jack M. McGill" and the other is signed "H & L Steel Co., by Jack McGill", this court has made the distinction between tweedle dee and tweedle dum. Although that is the result here, yet it is believed that the rule enunciated here is a fair and workable one and gives a reasonable meaning to the statute; that is, government sales documents will make a prima facie case unless within the four corners of the instruments a doubt or question arises as to sale or delivery.

Section 1733 does not make a government document received in evidence conclusive, irrefutable or immutable. The sales papers are not judgments. If such papers do not speak the truth, the defense can prove the untruth of the documents. In the instant case, ample evidence was offered by the defendants to discredit War Assets paper work—if the trial judge had been satisfied with defendants' evidence. In almost any case where the government has no more proof than it had here, the government

948

is still pretty much at the mercy of adverse witnesses.

In its findings the trial court found that there was an interrelation between the two entities and that Hansberger and Southard controlled both concerns. The complaint did not plead alter ego, fraud, or anything about interrelation. As to the claim on the larger sale, the finding is not necessary to sustain the judgment, but in the light of the whole, if excess the finding be, it should be treated as harmless excess.

The partners rely heavily on Lomax Transportation Co. v. United States, 9 Cir., 183 F.2d 331. There this court held that the government could not prove its damage suffered in appellant's warehouse to navy equipment by a certificate of some unidentified official of the U. S. Comptroller General's office to the effect that *he had settled* (emphasis supplied) the claims against the defendant and found the amount of $16,415.87 to be due the government.

■ Literally, something might be said for drawing a parallel—this case and that. But in the Lomax case the report was made by an agency which had no contemporaneous connection with the events of the loss. It was nothing but the comptroller's conclusion based on facts one knows not what. Common sense dictated a construction against permitting such an absurd result. As was said in Greenbaum v. United States, 9 Cir., 80 F.2d 113, government records admitted in evidence cannot have a greater evidentiary value than they intrinsically possess. Here in H & L Supply, where the record is a business document presumably made contemporaneously with the event by the agency conducting the deal which was a common business transaction, it is appropriate that the statute be applied and given the same effect as should be given a merchant's books.

The judgment should be modified by reducing it in the principal sum of $228.-13 as to the H & L Supply partners; otherwise, it is affirmed.