Dit LA PORTE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17523.

United States Court of Appeals
Ninth Circuit.

March 2, 1962.

Lionel Richman, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, William B. Osborne, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Dit La Porte was convicted of a violation of 50 U.S.C.A.Appendix, § 462 for failure to perform a duty required of him by the Universal Military Training

and Service Act. His appeal centers around the admission into evidence of copies of a document offered to prove the fact, recited in the document, that defendant had failed to report for civilian employment in lieu of military service. We hold that the document was properly received for the purpose indicated.

The indictment alleged that defendant was classified as a conscientious objector and ordered to report to the Los Angeles Department of Charities for civilian work contributing to the national health, safety and interest [1] and that he knowingly failed to report as ordered, in violation of 50 U.S.C.A.Appendix, § 462. On trial to the Court, the government offered in evidence photostats of the defendant's Selective Service System file. Defendant objected to the admission of one document in the file, identified as Selective Service Form 153. The government also introduced the Department of Charities' file relating to defendant, authenticated by the testimony of Horace W. Hingston, Personnel Officer of that Department. This file contained a carbon copy of the same Form 153.

Form 153 is a printed form titled "Order to Report for Civilian Work and Statement of Employer." We are concerned with the portion of the form titled "Statement of Employer," the first line of which had been filled in to read, "The registrant identified above *reported* for civilian work on the 29 day of November, 1960, to." (Emphasis supplied.) The name and address of the Department of Charities was then typed in, followed by the signature of the witness Hingston

as Personnel Officer of the Department. Below the date, the notation "(Did Not Report)" had been inserted. The failure to strike the word "reported" from the printed language of the form, when the words "Did Not Report" were added to it, left the document ambiguous on its face.

Mr. Hingston testified that it was his duty, assisted by a staff of six or seven people, to supervise the employment of conscientious objectors assigned to the Department of Charities for civilian work in lieu of induction. He testified that he had no independent recollection of defendant's case, but described the Department's general procedure as follows: His office received copies of Forms 153 from the Selective Service Board. The date on which each individual was to report for work was indicated either on the form or in a separate letter from the Board. If an individual did not report as ordered, one of Mr. Hingston's assistants entered the notation, " 'Did not report,' or something similar to that" on the form, and Mr. Hingston then signed the report and returned it to the Board. Mr. Hingston was asked whether he was able to ascertain by an examination of the Department of Charities' file, including Form 153, whether defendant had in fact reported on November 29, 1960. He answered that the defendant had not reported.[2]

The documentary evidence in the record, including Form 153 as explained by Mr. Hingston's testimony, was sufficient to support the trial court's determination that defendant did in fact knowingly fail to report as ordered.[3] However,

---

1. See 50 U.S.C.A.Appendix, § 456(j).

2. Defendant appears to contend that Mr. Hingston's testimony in this regard was based upon only part of the Department's files relating to the defendant. We read the record to the contrary.

3. The files of the Selective Service System detail the step-by-step development of defendant's ultimate determination to reject the Board's order, and render virtually irresistible the inference that he knowingly failed to report. On July 21,

1958 defendant advised the Board of his conscientious objection to war, and requested the special Conscientious Objector form. He stated in this form that he was "absolutely opposed to participation in war or assisting others to participate in war." Satisfied with his showing, the Board on September 4th classified defendant 1–O. On May 31, 1960, defendant wrote the Board stating, "My conscience do not permit me to do any civilian service." He appeared before the Board on June 15th, and the clerk of the Board

defendant argues that Form 153 was not admissible as proof of the recited fact of failure to report, and that the evidence of failure to report, other than Form 153, was inadequate.

I

■■ By the terms of 28 U.S.C. § 1732, Form 153 was admissible to prove defendant's failure to report as a record of that occurrence made in the regular course of business. The operations of the instrumentalities of government constitute "business" within the meaning of the statute,[4] and this is true of the operations of state and county agencies as well as those of the federal government agencies.[5] Mr. Hingston's testimony, plus the whole interrelated content of the Selective Service file, established that Form 153 was completed in the routine day-to-day operations of the Local Board and the Department of Charities. It was precisely the kind of contemporaneous record of events, systematically prepared by an agency for its own use and relied upon by it in the performance of its functions, which experience has shown to be trustworthy, and which therefore falls within the purpose and scope of the business records exception to the hearsay rule codified in Section 1732.[6]

Mr. Hingston testified that an examination of office files covering a period of years showed that the general practice was to record a failure to report by writing the phrase "Did not report" on Form 153. He further testified that the printed word "reported" was sometimes crossed out, but usually was not. On cross-examination he testified that words other than "Did not report" were sometimes used to indicate failure to report, and that the exact procedure was left to the particular subordinate who made the notation in the particular case. Defendant argues that because of these variations in the mode of entry Form 153 cannot qualify as a report made in the "regular course" of business within the meaning of Section 1732.

■ The content and method of preparation of the document sought to be introduced as a business record are relevant to the extent that they bear upon whether the particular document was prepared in the course of systematic routine office procedures to record information relating to, and to be used in, the routine operations of the business or agency. If the particular document is not of this sort it would not be admissible as a business record.[7] But if it is a record of this character, then it is admissible, whether or not it is also a type of document which is prepared repeatedly, or always in precisely the same way, or with precisely the same content. And of course the admissibility of a document, as distinguished from its weight, normally does not depend upon either completeness or freedom from ambiguity.[8]

noted that "when asked if he would be willing to accept civilian work in lieu of induction, he stated he did not believe he could if it was connected with the military in any way." He was asked to complete an application for civilian employment in lieu of induction, but returned the form without completing it. On July 1st, the Board wrote defendant offering him three specific types of civilian employment, but received no response. Defendant reported to the Board for an interview on October 6, 1960, and stated that he would refuse to perform any civilian work for Selective Service.

4. Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467, 472–473 (3d Cir. 1950). See also Canadian Pacific Ry. v.

United States, 272 F.2d 913, 916–917 (9th Cir. 1959).

5. Thomas v. Conemaugh & Black Lick R. R., 234 F.2d 429 (3d Cir. 1956).

6. Palmer v. Hoffman, 318 U.S. 109, 113–114, 63 S.Ct. 477, 87 L.Ed. 645 (1943). 5 Wigmore, Evidence, § 1525 (3d Ed. 1940). The Selective Service file was apparently admitted on the basis of Section 1732 in United States v. Borisuk, 206 F.2d 338, 340 (3d Cir. 1953).

7. Palmer v. Hoffman, 318 U.S. 109, 63 S. Ct. 477, 87 L.Ed. 645 (1943); Matthews v. United States, 217 F.2d 409, 413 (5th Cir. 1954).

8. Thus "incompleteness of a business entry was a fact to be weighed by the

Mr. Hingston testified that he did not have personal knowledge of defendant's failure to report, and defendant insists that the employee who observed the fact should have been available for cross-examination. Section 1732 provides that "lack of personal knowledge by the entrant or maker" affects only the weight of the business record and not its admissibility. It is true that some decisions under the statute have continued to apply the common-law rule that the record must reflect the personal observation of the entrant, but it is also held that this requirement is satisfied when it appears that the entry was based upon oral or written reports made to the entrant in the regular course of business by others in the agency who had personal knowledge of the transaction reported.[9] The underlying purpose of Section 1732 was to render it unnecessary to produce as witnesses all those who may have had a part in preparing the document or furnishing the information reflected in it.[10] Thus it is sufficient that the entry by Mr. Hingston,[11] made in the regular course of the business of his office, was based upon the report of any one of his six or seven subordinates, made to Mr. Hingston in the regular course of the business of the office, to the effect that the subordinate had personally observed that the defendant failed to report when ordered.

## II

Form 153 was also admissible in proof of defendant's failure to report under the exception to the hearsay rule applicable to statements prepared by public servants as part of their official duties. As an official record of the Selective Service System, Form 153 was admissible by the express terms of 28 U.S.C. § 1733,[12] which codifies the "official statements" exception to the hearsay rule as applied to records of the federal government, since those who observed and recorded defendant's failure to report acted as *ad hoc* officials of the Selective Service System.[13] And, in any event, the form was admissible as an official statement of these people in their capacity as officials

jury," and not a reason for exclusion. United States v. Kimmel, 274 F.2d 54, 57 (2d Cir. 1960). And under the common-law rule, "any kind of marks, capable of being interpreted, will suffice," as long as the entry is fairly intelligible. 5 Wigmore, Evidence, 410 (3d Ed. 1940).

9. Canadian Pacific Ry. v. United States, 272 F.2d 913, 916–917 (9th Cir. 1959); Standard Oil Co. of Cal. v. Moore, 251 F.2d 188, 214 (9th Cir. 1958), cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed. 2d 1148; Manhattan Fruit Export Corp. v. Royal Netherlands Steamship Co., 271 F.2d 607, 608 (2d Cir. 1959), cert. denied 363 U.S. 812, 80 S.Ct. 1249, 4 L.Ed.2d 1154. Compare Uniform Rule of Evidence 63(13). The Comment under that Rule makes it clear that personal observation by neither the entrant nor one reporting to him is prerequisite to the admissibility of business records.

10. Stegemann v. Miami Beach Boat Slips, Inc., 213 F.2d 561, 563–564 (5th Cir. 1954).

11. The record is clear that Mr. Hingston signed the entry and that one of his subordinates made the observations. We treat Mr. Hingston as the entrant. However, the result would be the same if the subordinate were treated as the entrant. In that case the entrant would clearly have the requisite personal knowledge, and it is settled that the entrant need not be called as a witness. United States v. Olivo, 278 F.2d 415, 416–417 (3d Cir. 1960); 2B Barron & Holtzoff, Federal Practice & Procedure, 250 (1961).

12. The Selective Service file was admitted under Section 1733 in Yaich v. United States, 283 F.2d 613, 616 (9th Cir. 1960). Section 1733 also appears to have been the basis for the admission of Selective Service files in Johnson v. United States, 285 F.2d 700 (9th Cir. 1960), and Kariakin v. United States, 261 F.2d 263, 265 (9th Cir. 1958). They have also been held admissible under the common-law official statements exception independently of Section 1733. United States v. Ward, 173 F.2d 628 (2d Cir. 1949). See also Penor v. United States, 167 F.2d 553 (9th Cir. 1948).

13. See 5 Wigmore, Evidence, §§ 1633, 1633 (a) (3d Ed. 1940). Compare Sternberg Dredging Co. v. Moran Towing & Transp. Co., 196 F.2d 1002, 1005 (2d Cir. 1952), with Matthews v. United States, 217 F.2d 409 (5th Cir. 1954).

of the Department of Charities, for the official statements exception, as a common-law rule, is applied to state and county records as well as federal records.[14] Either status of the entrants in this instance would provide the guaranty of trustworthiness which supports the admission of official records. And in either event the fullness and completeness of the official document would bear upon its weight and not upon its admissibility.[15]

It is also sometimes said of official records, as of business records, that they are admissible in proof of the facts recited only if the entrant could have testified to those facts as a witness.[16] However, these authorities also recognize that it is sufficient if the facts recorded were observed by the entrant's subordinates;[17] and, as noted, in the present case it is a necessary inference that defendant's failure to report was observed by one of Mr. Hingston's staff.[18] And again, if the subordinate rather than Mr. Hingston is to be treated as the entrant, it is ordinarily unnecessary to produce as a witness the person who created the official record. Indeed, the necessity which justifies the admission of official records in lieu of testimony is the burden which otherwise would be imposed upon government operations if all those who participated in the preparation of government records were required to appear and testify.[19]

Finally, we do not exclude the possibility, though we find it unnecessary to explore it, that if Form 153 were not technically admissible under either the business records or official statements exception, it might nonetheless come in under Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.[20]

Affirmed.

14. Olender v. United States, 210 F.2d 795, 801 (9th Cir. 1954), cert. denied 352 U.S. 982, 77 S.Ct. 382, 1 L.Ed.2d 365. And see generally Orfield, Proof of Official Records in Federal Cases, 22 Mont.L. Rev.137, 146 (1961).

15. Southard v. United States, 218 F.2d 943 (9th Cir. 1955). See also Penor v. United States, 167 F.2d 553, 555 (9th Cir. 1948), supra.

16. There is no suggestion of this restriction upon the face of Section 1733. See also Model Code of Evidence, Rule 515, and Uniform Rule of Evidence 63(15), both of which eliminate the requirement of personal observation where it is part of the employee's official duty to investigate the facts surrounding the act sought to be proved.

17. Olender v. United States, 210 F.2d 795, 801 (9th Cir. 1954), supra; 5 Wigmore, Evidence, § 1635 (3d Ed. 1940). See also United States v. Grayson, 166 F.2d 863, 868 (2d Cir. 1948).

18. The record revealed that defendant was ordered to report to the room occupied by Mr. Hingston and his staff.

19. 5 Wigmore, Evidence, § 1631 (3d. Ed. 1940). See also Woods v. Turk, 171 F. 2d 244, 245 (5th Cir. 1958).

20. Rule 26 provides the standards for the admissibility of evidence in criminal proceedings in federal district courts. Under its counterpart in the Federal Rules of Civil Procedure, Rule 43(c), 28 U.S.C., it has been held that the district court may in its discretion admit hearsay evidence if satisfied that reasonable standards of necessity and trustworthiness are met. Dallas County v. Commercial Union Assur. Co., 286 F.2d 388, 394–398 (5th Cir. 1961). Rule 26 provides more, rather than less, liberal standards for the admission of evidence. (Preliminary Report on the Advisability and Feasibility of Developing Uniform Rules of Evidence for the United States District Courts, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Feb. 1962, pp. 26–27.) The District Court might well have concluded that the evidence proffered and received in the present case satisfied appropriate standards.