UNITED STATES of America,
Libellant,

v.

TUG OTTO, her engines, tackle, appurtenances, etc., and BARGE ALAMO 600, its tackle, apparel, furniture, *in rem*, and Alamo Water Transportation, *in personam*, Respondents.

No. 66–G–12.

United States District Court
S. D. Texas,
Galveston Division.

Aug. 24, 1967.

Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for libelant.

James E. Ross, Houston, Tex., for respondents.

## MEMORANDUM AND ORDER:

NOEL, District Judge.

This is an action brought by the United States under the Rivers and Harbors Act, 33 U.S.C. § 408,[1] to recover damages to Texas City Channel Lighted Buoy #6 ("Buoy #6"), and for the assessment of a penalty under 33 U.S.C. §§ 411 and 412.[2]

Initially, the suit was directed against the Alamo Water Transportation Co. *in personam* and the Tug Otto and Barge Alamo 600 *in rem*. The *in personam* action against Alamo Water Transportation Co., owner of said barge and tug, has been severed for later disposition, and the Tug Otto has been dismissed from this proceeding at the request of libellant.

On May 11, 1962, while the Tug Otto and Barge Alamo 600 were making a turn from the Intracoastal Waterway into the Texas City Ship Channel, a strong outgoing tide caused the bow of the Barge Alamo 600 to be set against Buoy #6, an aid to navigation and established mark owned by the United States. The person in charge of the Tug Otto radioed the Coast Guard station that the barge had just "run over" a buoy. The same day, Coast Guard personnel were sent to survey the damage to the buoy.

Chief Petty Officer Connie L. Wilson, who accompanied the Coast Guard inspection group, testified on behalf of the government that Buoy #6 was found to be fifty yards off its charted position. Wilson inspected the buoy and saw that

---

1. § 408.
    "It shall not be lawful for any person or persons to * * * destroy, move, injure * * * or in any manner whatever impair the usefulness of any * * * work built by the United States * * * used * * * as * * * buoys, or other established marks * * *."

2. § 411.
    "Every person and every corporation that shall violate * * * the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500. * * *"
    § 412. "[A]ny boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said * * * vessel * * *."

the paint work on the buoy body was scarred down to the metal. The buoy body on the side next to the battery pocket was "caved in" approximately eight or ten inches deep, two or three feet wide, and three or four feet in length. The seam of the buoy body was cracked about a foot or so, and two pieces of angle iron had been torn loose from the deck.

Wilson testified that he was not allowed to open the battery pocket without prior approval from his superior, and did not inspect the batteries until the Coast Guard unit returned a week or ten days later to relieve the buoy. During the later inspection, he discovered the battery rack to be crushed and found several batteries to be damaged.

Wilson further testified that in his opinion the damage to the buoy body was done the day of the initial inspection, May 11, 1962. This conclusion was based upon his experience in examining many damaged buoys in the past, and particularly upon the fact that the metal exposed where the paint had been scarred was bright and shiny and had not started to corrode, and also the fact that the special fast-drying paint used on the buoy was soft and slick where it had been scarred.

On May 14, 1962, an order was issued to relieve Buoy #6, and the Alamo Water Transportation Co. was notified that the company would be responsible for the costs involved in restoring the buoy, and that a claim for damages would be made in due course.

V. C. Bartels, an officer attached to the Coast Guard Base in Galveston, Texas, informed the Commander of the Eighth Coast Guard District that Buoy #6 was completely beyond repair, the buoy cage was badly mangled and portions of the buoy body had been mashed flat, and that a board of survey would be convened to determine its disposition.

On June 15, 1962, a board of survey inspected Buoy #6 and arrived at the conclusion that it was damaged beyond economic repair. The board recommended that the buoy be sold as scrap and replaced by another buoy.

The Commander of the Eighth Coast Guard District sent a bill to the Alamo Water Transportation Co. on December 5, 1962. The bill itemized the expenses as follows:

| | |
|---|---|
| Cost of replacement buoy | $2,700.00 |
| Battery rack | 56.00 |
| 24 Willard batteries | 1,017.00 |
| Preparation of lighted buoy (7-foot) for replacement of damaged buoy | 83.00 |
| Vessel time consumed by CG–40482 on 11 May 1962 inspecting buoy and attempting to reset— 1 hour 45 minutes @ $48.00 per hour | 84.00 |
| Vessel time consumed by CGC Sentian on 21 May 1962 relieving damaged buoy— 3 hours 38 minutes @ $48.00 per hour | 174.40 |

COSTS COMPUTED IN ACCORDANCE WITH TITLE 33 CODE OF FEDERAL REGULATIONS, PART 74

Due in 30 days      Total      $4,114.40

A notice of the sale and invitation to bid on the buoy was posted February 15, 1963. Only one bid of one dollar was received, which was accepted by the government on March 5, 1963.

Respondent admits striking the buoy and causing some damage, and, because this is a case of liability without fault, respondent offers no defense. Respondent argues, however, that the United States has failed to prove damages in the amount and to the extent claimed. Specifically, respondent alleges that the only evidence that the buoy was damaged beyond economic repair and that the twenty-four batteries required replacement is the report of the board of survey; that while this document is admissible under 28 U.S.C. § 1733, it is not entitled to any probative weight because no evidence was offered by the United States in support of this opinion as none of the members of the survey board testified.

28 U.S.C. § 1733 provides:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept."

■ The record of the board of survey finding that Buoy #6 was damaged beyond economic repair is proof of the opinion reached by its members after a personal examination of the buoy. An appraisal of damages may be based upon an opinion expressed in a public document, admissible under section 1733, if, as here, the appraisal was made by experts with personal knowledge of the damage.[3] Southard v. United States, 218 F.2d 943 (9th Cir. 1955).

The Coast Guard is given authority to dispose of aids to navigation under 14 U.S.C. § 93(i), 40 U.S.C. § 483(b) (4) and 40 U.S.C. § 484. The Coast Guard also has the authority to conduct the necessary investigations in connection with the performance of its various duties, 14 U.S.C. § 93(e), which authority may be delegated to a board of survey.

■ No particular degree of expertise would be required to make a determination if a particular buoy were damaged beyond economic repair. However, the survey report indicates that a "formal" survey was made by three Coast Guard personnel, and that the survey was made in accordance with Navy regulations. The bill received by the Alamo Water Transportation Co. specifically stated that the costs were computed in accordance with 33 C.F.R. 74. Subpart 74.01–1 provides that when an aid to navigation is destroyed, the Coast Guard shall make prompt demand upon the responsible party for the full cost to the government of replacing the aid. Subpart 74.01–1(c) states: "The repair or replacement with an identical or substitute aid as prescribed in this subchapter *may be accomplished by the responsible interests * * *"* (Emphasis added.) Therefore, if the respondent had wished to challenge the board's determination that the buoy was damaged beyond economic repair, it was incumbent upon its owner to investigate the damaged buoy and, if dissatisfied with the board's determination, to offer to repair or to replace the damaged aid with an identical or substitute aid satisfactory to the Coast Guard. The respondent has lingered too long to challenge the survey board's finding at this late date.

■■ I find that the testimony of Chief Petty Officer Wilson adequately

3. The reason for this rule is that there is a presumption the survey was properly performed, because of the likelihood that public officials would have no memory of the specific survey, and the inconvenience of calling government officials from all over the country. See Howard v. United States, 108 U.S.App.D.C. 38, 278 F.2d 872 (1960); Wong Wing Foo v. McGrath, 196 F.2d 120, 123 (9th Cir. 1952).

supports the decision of the board of survey that the buoy was damaged beyond economic repair. Commander Hallberg testified on behalf of the United States that due to the staunch construction of Buoy #6, together with the regular program of inspection and maintenance, the buoy, except for the collision in question, would have had an indefinite life. This testimony was neither rebutted nor challenged by the respondent. I find, therefore, that the amount of $2699.00 [4] fairly represents the cost of replacing the buoy and is a just and reasonable estimate of the buoy's intrinsic value. Since the battery rack is a part of the buoy and, according to Wilson's testimony, was badly damaged, the claim of $56.00 for replacing the battery rack is supported by the evidence.

■ Items which do not have an indefinite life are obviously subject to depreciation in value as their useful life is diminished. Parts of aids to navigation which have a limited useful life and which have a market value must be depreciated in order to arrive at their fair and reasonable value at the time of the damage or loss. See Rawls Bros. Contractors, Inc. v. United States, 251 F. Supp. 47, 57 (M.D.Fla.1966); United States v. Pinckney, 150 F.Supp. 790, 792 (S.D.Ga.1957).[5] The government, however, offered no testimony as to the age or useful life of the twenty-four Willard batteries allegedly damaged as the result of the Barge Alamo 600's collision with Buoy #6. The government having failed to offer any proof of the replacement cost, as determined by the fair market value of the batteries on May 11, 1962, I am compelled to find the replacement cost chargeable to the respondents to be naught. Furthermore, the only testimony of any damage to the batteries was Wilson's statement that when he reexamined the buoy a week or ten days after the collision in question, he found some of the batteries to be damaged. The record does not reflect that the board of survey, in making its appraisal of the buoy, considered the batteries as a part of the buoy. I find, therefore, that the batteries were not a part of the "buoy" as found by the board to be beyond economic repair. The government has failed to prove by competent evidence that twenty-four Willard batteries were damaged beyond economic repair.

■ The United States is entitled to the recovery of $258.40, representing the vessel time to inspect and relieve Buoy #6, as calculated in accordance with 33 C.F.R. § 74.20, and $83.00 for preparation of a lighted buoy to replace Buoy #6. None of these charges have been contested by respondent.

■ The Barge Alamo 600, being a vessel used and employed in violation of 33 U.S.C. § 408, is liable to the United States for a pecuniary penalty of $500 under the provisions of 33 U.S.C. §§ 411, 412, and in addition thereto for the damage done May 11, 1962, to Buoy #6 by said vessel in the sum of $3096.40, with costs, under Sections 411 and 412.

Counsel for the United States is instructed to prepare an appropriate decree in conformance with this Memorandum and Order.

---

4. The original figure of $2,700.00 reduced by the salvage value of $1.00.

The respondent argues that the buoy in its damaged condition was worth more than the $1.00 received. Respondent, however, offered no evidence of the probable value of the buoy, and respondent has the burden of proving mitigation. On the other hand, Commander Hallberg testified that a buoy damaged beyond economic repair is practically worthless. Neverthe-

less, the sale was conducted under standard government procedures, and the $1.00 bid which was accepted was the only bid offered. This speaks for itself.

5. This conclusion is reinforced by 33 C.F.R. § 74.01–1(b), where it is said: The Coast Guard does not wish to gain any pecuniary profit from these incidents. * * *" See also section 74.01–5(b).