**PETWORTH PHARMACY, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 7525.

District of Columbia Court of Appeals.

Argued Jan. 24, 1974.

Decided March 26, 1975.

Reconsideration en Banc Denied April 24, 1975.

Sylman I. Euzent, Kensington, Md., for appellant.

Melvin J. Washington, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and PAIR,* Associate Judges.

* Retired as of April 14, 1974.

KELLY, Associate Judge:

This appeal from a determination in the Superior Court, Tax Division, that a franchise tax deficiency in the sum of $25,255.-99 was validly assessed against appellant Petworth Pharmacy, Inc. (Petworth) raises questions of whether the trial court erred in (1) refusing to admit into evidence certain of Petworth's business records; (2) declining to dismiss the tax fraud penalty for failure of the District of Columbia to comply with Super.Ct.Tax R. 7; (3) finding that Petworth's books and records were inadequate; (4) holding the government had met its burden of proving a tax deficiency; (5) finding that the proof of price was adequate; (6) holding the government had met its burden of proof of fraud; (7) failing to rule that the government's stipulated answers to a hypothetical question necessarily inferred a stipulation of the facts contained therein; and (8) failing to grant a fair, impartial and unprejudiced trial. We reverse and remand for a new trial.

On October 13, 1971, the District of Columbia Department of Finance and Revenue sent notice to Petworth of a $34,491.30 tax deficiency, including a 50% fraud penalty and interest charges, based upon an intentional failure to report income of $393,234.13 for the calendar years 1967, 1968 and 1969. Petworth was alleged to have made illegal sales of Robitussin AC, a cough syrup containing codeine, without reporting revenues from such sales on its tax return, and to have awarded Richard Rosenberg, a corporate officer, an excessive corporate bonus of $25,300.

Petworth paid the tax and brought suit pursuant to D.C.Code 1973, § 47–1593, and Super.Ct.Tax R. 6(b)(7)(A) for a redetermination of the assessed deficiency, claiming it had reported all Robitussin AC sales in its duly-filed tax returns for each of the years in question and that the bonus had been properly treated as a deductible item under D.C.Code 1973, § 47–1561. In a subsequent amendment to the complaint Petworth admitted that an additional tax of $1,518 was due for the year 1969, thus reflecting its acceptance of the government's disallowance of the bonus.

Petworth took the position at trial that the nonprescription Robitussin AC sales were cash sales, rung up on its cash registers and included in its daily cash receipts as miscellaneous products sales, upon which franchise taxes had been paid for all three years in dispute. Its direct case consisted of testimony by Richard Rosenberg, Petworth's co-manager and vice-president; by Phil Blank, a District of Columbia tax investigator and of various exhibits, all in an attempt to prove that Robitussin AC sales were included in Petworth's revenues and reported in its tax returns. When Petworth attempted to introduce its daily cash reports, cash register tapes, and 1968 summary book, under the Federal Shop Book Act, 28 U.S.C. § 1732(a) (1970), the court refused their admission on the grounds that they were irrelevant and contained discrepancies which rendered them inaccurate. The parties submitted post-trial briefs in accordance with Super.Ct. Tax R. 12, after which the trial judge entered an initial order finding unreported sales by Petworth of Robitussin AC which were the result of a conscious fraudulent plan. The court issued a subsequent order belatedly admitting Petworth's exhibits 1, 4 and 5 only into evidence, and stating the exhibits would be considered in determining the final order in the case which dealt only with the dollar amount of the tax deficiency.

The goverent's theory of the case was that the Rosenbergs had made sales of Robitussin AC on behalf of the pharmacy but had kept the profits themselves without reporting them as corporate sales. Its case consisted of testimony and records of wholesale drug distributors attesting to Petworth's purchases at wholesale of nearly one-quarter million dollars worth of Robitussin AC during the three years in question. Sergeant Edmund K. Mac-Kinnon of the Metropolitan Police Depart-

ment testified that the police had observed the transfer and transportation of large quantities of Robitussin AC from the back door of the pharmacy to Richard Rosenberg's home in suburban Maryland. Sergeant MacKinnon also stated that Petworth's employees had refused to sell Robitussin AC over the counter to his undercover agents. In addition, Mr. Willie Mack Holt testified that he had personally bought Robitussin AC from the Rosenbergs at the pharmacy in large quantities over an extended period of time during the three years in question. He gave testimony as to the price paid for the syrup. Finally, the government stated that the Robitussin AC which remained in stock as of February 1970, had a wholesale value of only $4,500.

In rebuttal, Petworth called Richard Lahr, a certified public accountant who qualified as an expert, and asked him to hypothesize whether the Robitussin AC sales could possibly have been included in Petworth's reported revenues for the years in question. Mr. Lahr replied affirmatively, explaining how, based on the figures he was given, the records could have included such sales. Jerry Rosenberg, Petworth's co-manager and secretary-treasurer, testified primarily about the bonus paid his brother Richard. Finally, Moses Mills, Jr. offered testimony in rebuttal to that of Mr. Holt.

■■ Appellant first contends the trial court erred in not admitting its business records at trial and its limited admission of them post-trial came too late to cure the defect. We agree. Petworth's co-manager and vice-president, Richard Rosenberg, testified that these daily cash reports, cash register tapes and summary book were the regularly-kept business records of the pharmacy. In addition he stated that the records were made in the ordinary course of the business and it was the regular practice of the pharmacy to make such records on or about the same time as the event or transaction involved. Appellant adequately explained why the records were not verifiable by its bookkeeper; she had become incapacitated by a brain tumor which had destroyed her memory. Insofar as irregularities such as inconsistencies, inaccuracies, or omissions are concerned, these matters bear on the weight to be given such materials and not on their admissibility. United States v. Re, 336 F.2d 306 (2d Cir.), cert. denied, 379 U.S. 904, 85 S. Ct. 188, 13 L.Ed.2d 177 (1964); *accord,* United States v. Schwartz, 464 F.2d 499, 511 (2d Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); Ross v. American Export Isbrandtsen Lines, Inc., 453 F.2d 1199, 1200–01 (2d Cir. 1972). We find the records were properly admissible under the Federal Shop Book Act [1] and it was error to deny their admission.

■■ In a tax case the petitioner bears *the burden of proving the incorrectness of* the government's assessment of a deficiency. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Super.Ct.Tax R. 11(d). Petworth explained to the court that the records were essential to its case and that without them it could not properly develop its case and it again presses the contention here. Therefore, the judgment below is reversed and the case remanded for a new trial.[2]

So Ordered.

1. 28 U.S.C. § 1732(a) (1970).

2. Our disposition of this case obviates the need to address the other issues raised by appellant.