**Harold C. PRYOR, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–1462.**

District of Columbia Court of Appeals.

Submitted Nov. 15, 1985.

Decided Jan. 24, 1986.

---

Joan Gauche, Washington, D.C., appointed by this court, was on brief, for appellant.

Ellen Bass, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., were on brief, for appellee.

Before PRYOR, Chief Judge, NEBEKER, Associate Judge, and REILLY, Senior Judge.

REILLY, Senior Judge:

Appellant was convicted of one count of attempted armed robbery, D.C. Code §§ 22–2902, –3202 (1981 & Supp.1985), and two counts of armed robbery, id. §§ 22–2901, –3202,[1] after a jury trial concerning his role in the holdup of a neighborhood savings bank at upper New Hampshire Avenue. As grounds for reversal of these convictions, appellant contends that the trial court erred: (1) in ruling that certain documents authenticated by a government witness were admissible under the business records exception to the hearsay rule; (2) by refusing to exclude these exhibits as merely prior consistent statements of the witness who had prepared them; (3) in denying his request for a "standard" jury instruction on a perjurer's testimony; and (4) in permitting an agent of the Federal Bureau of Investigation to testify about the lineup identification of appellant made by another government witness. We have concluded that none of the foregoing amounted to error and, accordingly, affirm.

The government presented substantial evidence in its case-in-chief—including detailed testimony by one of the robbers, Reginald Wright, who had turned state's evidence—to establish that appellant was one of the four men who had engaged in the robbery. We briefly summarize this evidence.

On one October morning shortly after eleven o'clock, four men arrived by automobile at the bank, and three of them emerged and entered, leaving the driver in the car. One of them, Wright, approached the tellers' cage and by dint of a threatening note, obtained a packet of currency. A second, drawing a handgun on an assistant bank manager, directed him to remain seated, pointed the gun at a customer who had just come in, and finally exacted additional money from another teller. While this was going on, appellant stood by the entrance door—presumably acting as a lookout. After his companions had succeeded in their demands for cash, he signalled them. The trio departed and left the scene in the getaway car, unpursued. The driver took them to his house, where they divided the proceeds of the holdup, and dispersed. Appellant was arrested a month later.

Prior to trial, Wright, who had also been arrested, pleaded guilty and testified as to appellant's part in the robbery. This damaging evidence was corroborated in a significant degree by the assistant bank manager, who testified that appellant was the man standing by the door, and that remembering his face on that occasion, the witness had been enabled to select his picture

1. This section provides certain mandatory sentences for persons convicted of violent crimes while armed. *See* D.C.Code § 22–3202(c), (d) and (e) (1985 Supp.).

soon thereafter in a photographic display, and later identify him in a police lineup.

In his defense, appellant called several witnesses to prove an alibi. The substance of it was that two young men, members of the family of a Mrs. Rosetta Whorley, encountered appellant and another friend in the streets about an hour before the robbery occurred and invited them over to the Whorley house, where they all sat down to a late breakfast, followed by card playing and drinking. While they were at the table, a cousin of Mrs. Whorley, Judy Fisher, a distributor of Amway products, dropped in, and discussed with the young men the prospect of becoming commission salesmen for Amway. The group did not break up until early afternoon, when Mrs. Whorley, upon returning from work, professed annoyance at what she perceived as a drinking party, and ordered the guests out of her home.

There is little doubt that such a gathering did occur, for Mrs. Whorley—a seemingly unbiased witness—recalled the incident and corroborated the friends of appellant who had taken the stand in his behalf by testifying that he was indeed in their company when she found the group in her house. From the standpoint of the defense, however, the alibi was flawed by convincing evidence—at least convincing to the jury—offered by the government in rebuttal showing that this gathering occurred not on the day of the robbery but nine days later.

Calling Judy Fisher to the stand, the government elicited testimony from her that on October 26—the critical date—she was in a shopping mall discussing the "Amway plan" with the proprietor of a gift shop at the very hour the alibi witnesses placed her at the Whorley house. Fisher also testified that she did call at the Whorley household on November 4 for the purpose of discussing Amway business, and that this was the first time she ever met appellant. In confirmation of these dates, the government offered, and the court received two documents which the witness

had kept, *viz.:* her appointment calendar and her "Amway prospect" book.

### I

Appellant's first two assignments of error are directed at the admission of these exhibits. Before deciding to receive them, the court conducted a *voir dire* examination. The witness, Fisher, stated that she used her calendar to schedule daily business appointments, that such appointments were entered contemporaneously upon being made, but if any particular appointment did not materialize, she scratched out that entry.

The Amway prospect book served a slightly different purpose. In it, the witness said, she recorded the names of people she intended to approach concerning the Amway plan. Once she actually met someone she had listed in the book, she immediately recorded the date of their meeting. If no such meeting took place, no date would be reflected in the record. Finally, Fisher testified that she maintained both the calendar and prospect book for business reasons in addition to tax record-keeping purposes. This, she said, was an ordinary practice of the business.

The trial court permitted the introduction of both documents over the defense's hearsay objection, saying:

I am prepared to admit all of these records under the business records exception and the jury can determine what weight to consider them. It is clear from the witness' testimony that these are records kept in the regular course of her business. It is the regular course of her business to keep them and the entries were made contemporaneously with the transaction.... Quite clearly the witness relies heavily on the records to conduct her business [and] determine her income tax liability. There was absolutely no incentive for her to do anything other than maintain these records accurately. Consequently there is all the indicia of reliability.

Thereupon, Fisher was examined before the jury. After reiterating much of what she said in the *voir dire* proceeding, Fisher, relying on the entries, testified that she had in fact visited the Whorley home on business on November 4 and not earlier, and that on that occasion she discussed Amway business with appellant and the others there. To corroborate this account, the government offered the calendar and prospect book. Both were admitted as substantive evidence.

Although appellant's basic premise that an unsworn statement made outside court, if offered to establish the truth of the fact so stated, is generally excludable as hearsay, *Morris v. United States*, 398 A.2d 333, 336–37 (D.C.1978), a well-known exception to the hearsay rule, the admission of records generally kept in the course of business, has long been recognized in this jurisdiction, *e.g.*, *Taylor v. United States*, 116 U.S.App.D.C. 278, 323 F.2d 283, *cert. denied*, 375 U.S. 913, 84 S.Ct. 209, 11 L.Ed.2d 151 (1963), even though the person making such records is not available to testify. This exception, with its limitations, has been defined in the rules of the Superior Court as follows:[2]

> Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility....

■ In its ruling, quoted *supra*, the trial court found that all three components of the business records exception had been adequately demonstrated. We agree. It is plainly evident, from our examination of the record, that Ms. Fisher's calendar and prospect book met the criteria of Rule 43–I(a).

■ Appellant argues, however, that these documents were not admissible under that rule, because (1) the records are incomplete; and (2) Fisher admitted maintaining the records for tax purposes. Neither factor rendered these exhibits inadmissible. The fact that the records may have been incomplete bears only on the weight to be accorded this material by the jury. *See Petworth Pharmacy, Inc. v. District of Columbia*, 335 A.2d 256, 258 (D.C.1975) ("Insofar as irregularities such as inconsistencies, inaccuracies, or omissions are concerned, these matters bear on the weight to be given ... [business records] and not on their admissibility. (citations omitted)); *see also La Porte v. United States*, 300 F.2d 878, 880 (9th Cir.1962). As to the second objection, Fisher testified that she also kept the records for business reasons, such as the scheduling of appointments. *Compare United States v. Hershenow*, 680 F.2d 847, 861 n. 12 (1st Cir.1982) (doctor's appointment books of patient's visits admissible under FED.R.EVID. 803(6)); *United States v. McPartlin*, 595 F.2d 1321, 1347–51 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (desk calendar-appointment diaries admissible under FED.R.EVID. 803(6)).

Appellant also argues that even if Ms. Fisher's records were admissible as entries made in the regular course of business, this material should have been excluded as she had taken the stand herself and testified with regard to the events referred to in these records. He relies on the well-established rule that when a witness has testified on direct examination and has not been

2. Super.Ct.Civ.R. 43–I(a), now applicable in criminal cases by Super.Ct.Crim.R. 57(a). *Cf.* FED.R.EVID. 803(6) (records of regularly conducted activity).

impeached, evidence of a prior consistent statement should be rejected.[3]

The rule does have some exceptions, one conspicuous example being the admissibility of pretrial identifications, *e.g.*, recognition of photograph, selection in police lineup, etc., to reinforce courtroom identification of a defendant by a witness, *Clemons v. United States*, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), the rationale of which was cited by this court as justifying admission of prior description recorded by police officers to corroborate in-court identification of defendant by robbery victim. *Morris v. United States, supra*, 398 A.2d at 338.

■ In our opinion, this exception to the general rule excluding prior consistent statements should also apply to the admission of documents which qualify as business records. Indeed it would be illogical to hold that such entries receivable as evidence, even though the entrant is unavailable, become inadmissible if the entrant testifies. In such circumstances, the person who actually prepared the documents is available and subject to cross-examination, thereby eliminating the objection frequently advanced when business records are offered, that the introduction of such documents through a witness who cannot vouch for the truth of their contents deprives an accused of his Sixth Amendment right "to be confronted with the witnesses against him." *See Howard v. United States*, 473 A.2d 835, 838 (D.C.1984).

Curiously enough, there seems to be no published opinion in this jurisdiction which has decided the precise issue appellant has raised. In *McWilliams v. Lewis*, 75 U.S. App.D.C. 153, 154, 125 F.2d 200, 201 (1941), where the receipt of a written report of an automobile accident made by a police witness was challenged on appeal, the author of the opinion, Judge Edgerton, stated that he viewed the report admissible as a business record, but that his judicial colleagues concurred in affirmance only on the ground that prejudicial error had not been demonstrated. There are dicta or indications in other cases that such documents, if viewed as business records, could be or were admissible in trials where the writers testified. *See Franklin Investment Co. v. Smith*, 383 A.2d 355, 356–57 (D.C.1978); *Hines v. United States*, 95 U.S.App.D.C. 118, 119, 220 F.2d 381, 382 (1955). In a recent case, *United States v. Smith*, 172 U.S.App.D.C. 297, 305, 521 F.2d 957, 965 (1975), the court observed that a "business record is admissible even if its maker testifies, for it is the record that is the most reliable evidence of what was heard...." It may be noted that this particular case is distinguishable from the one before us, in that the record in question had been offered to prove an *inconsistent* statement by a key witness. Nevertheless, we regard the observation of the court as particularly applicable to the admission of the challenged documents in this case. Many persons can recall witnessing a particular event which seems of no special importance at the time, but their recollection of the date of such occurrence is always a matter of skepticism unless some particular record is made of it. Consequently, we have concluded that in a case like this—where the crucial issue turned on the accuracy of the date a particular group assembled—the trial court far from committing error, correctly admitted business entries made *ante litem motem*, as documentation of the oral testimony of the entrant.

## II

The other two objections raised by appellant to rulings of the trial court may be disposed of briefly as similar contentions have recently been considered and rejected by decisions of this court.

The first objection is directed at the denial of a request for a special instruction

---

**3.** 4 J. WIGMORE ON EVIDENCE § 1124 (Chadbourn Rev. ed. 1972); *Paul T. Stone v. Metzler*, 68 App.D.C. 359, 98 F.2d 231 (1938) (admission of memorandum by plaintiff, not used to refresh recollection, but to bolster his testimony was held reversible error).

concerning the weight to be accorded the testimony of an admitted perjurer. The record shows that Reginald Wright, the government witness who had confessed that he was one of the men who had robbed the bank, and testified that appellant was an accomplice of his in this crime, had previously lied under oath. It was brought out that Wright had pleaded guilty to a charge of attempted robbery in 1982 in a different case and received an enhanced sentence because of prior convictions. He subsequently filed a motion to modify that sentence, averring that when he entered his guilty plea he did not understand that he was subject to an added penalty. At trial in the instant case, Wright admitted that this sworn representation was false. Appellant now asserts that the court should have given the "standard" instruction on a perjurer's testimony. *See* Criminal Jury Instructions for the District of Columbia, No. 2.24 (3d ed. 1978).

■ The court did instruct the jury, however, on an accomplice's testimony, *see id.* No. 2.22, quoting another "standard" charge. In *Sherer v. United States,* 470 A.2d 732, 741 (D.C.1983), *cert. denied,* — U.S. ——, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984), we specifically addressed this issue and held that "[a]lthough a merged perjurer/accomplice instruction would have been appropriate, *see United States v. Leonard,* 161 U.S.App.D.C. 36, 43, 494 F.2d 955, 962 (1974), the court was not required to give 'double instructions.' *Id.*" Accordingly, we find no error in the court's treatment of the request for instructions.

Appellant finally argues reversible error was committed when the court over objection permitted to stand the testimony of an FBI agent who was called to bolster the pretrial identification of appellant by another government witness. The latter, the manager of the bank, told the jury that at the time of the holdup of the tellers, he was unaware of any unusual occurrence until he happened to look up and saw three strangers leaving the bank together. Although he caught only a rapid glance at their faces, he testified that he later attend-

ed a police lineup and pointed to an individual there as having been one of the trio he had seen departing. He was not asked to make a courtroom identification, but testified that he was "reasonably sure" at the lineup, "but at the point of the robbery I couldn't swear to it on the bible that that was the particular person who was in the office that day." Over objection, the government then was allowed to call the FBI agent to the stand. He identified appellant as the individual the bank manager picked out of the lineup.

According to appellant, the admission of this testimony was clearly the kind of error we deemed ground for reversal in *In re L.D.O.,* 400 A.2d 1055 (D.C.1979). But in two subsequent cases, where prosecution witnesses were unable or not called upon to identify defendants in court, evidence of pretrial identifications by these witnesses was held properly received. Referring to the first of these decisions, *Wilkerson v. United States,* 427 A.2d 923 (D.C.), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981), we said in *Rice v. United States,* 437 A.2d 582, 583 (D.C.1981):

> Our decision in *In re L.D.O.,* 400 A.2d 1055 (D.C.1979), is inapposite to the instant case because, as we pointed out in *Wilkerson, supra,* at 927, our holding there rests upon the fact that the complainant *disavowed at trial* his pretrial out-of-court identification of the defendant. Under these particular circumstances, there was no basis for permitting the testimony at trial of his pretrial identification. [Emphasis in original.]

■ In the case before us, the bank manager in his testimony neither disavowed nor disparaged his lineup identification. Accordingly, on the authority of the *Rice* opinion, we have concluded that this particular contention of appellant is also lacking in merit.

*Affirmed.*