**UNITED STATES of America,**
**Plaintiff,**

v.

**The TUG SUNDIAL (VESSEL ID NO. 652357), in rem, Barge 166, in rem, Barge 71, in rem, The Pioneer, in rem, their apparel, tackle and appurtenances; Bank of America NA, in personam; and Tidewater Barge Lines, Inc., in personam, Defendants.**

**No. 3:11–cv–00227–HU.**

United States District Court,
D. Oregon,
Portland Division.

March 15, 2012.

Ron Silver, United States Attorneys Office, Portland, OR, R. Michael Underhill, Eric Kaufman–Cohen, U.S. Department of Justice, San Francisco, CA, for Plaintiff.

Daniel F. Knox, Noah Jarrett, William J. Ohle, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for Defendants.

## ORDER

HERNANDEZ, District Judge:

Magistrate Judge Dennis J. Hubel issued a Findings and Recommendation (doc. # 36) on January 9, 2012, recommending that (1) the motion for partial summary judgment (doc. # 13) filed by Bank of America NA (the "Bank") and Tidewater Barge Lines, Inc. ("Tidewater") be GRANTED in part and DENIED in part; and (2) the second motion for partial summary judgment (doc. # 21) filed by the Tug Sundial ("Sundial"), Barge 166, Barge 71, the Pioneer, and their respective apparel, tackle and appurtenances, the Bank, and Tidewater (collectively, "Defendants") be GRANTED in part and DENIED in part.

The United States of America ("Plaintiff") and Defendants timely filed objections to the Magistrate Judge's Findings and Recommendation. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); *Dawson v. Marshall,* 561 F.3d 930, 932 (9th Cir.2009); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc). I have carefully considered the parties' objections and conclude that the objections do not provide a basis to modify the Findings and Recommendation. I have also reviewed the pertinent portions of the record *de novo* and find no error in the Magistrate Judge's Findings and Recommendation.

## CONCLUSION

The Court ADOPTS Magistrate Judge Hubel's Findings and Recommendation (doc. # 36). The motion for partial summary judgment (doc. # 13) filed by the Bank and Tidewater is therefore GRANTED in part and DENIED in part, and the second motion for partial summary judgment (doc. # 21) filed by Defendants is

GRANTED in part and DENIED in part. Oral argument is unnecessary.

IT IS SO ORDERED.

HUBEL, United States Magistrate Judge:

### Findings and Recommendation

This is a case in admiralty against defendants the Tug Sundial ("Sundial"), *in rem*, Barge 166, *in rem*, Barge 71, *in rem*, The Pioneer, *in rem*, and their respective apparel, tackle and appurtenances, Bank of America NA ("the Bank"), *in personam*, and Tidewater Barge Lines, Inc. ("Tidewater"), *in personam* (collectively "Defendants"). Currently before the court is the Bank and Tidewater's motion (# 13) for partial summary judgment dismissing plaintiff the United States of America's ("Plaintiff") claims against the Bank, striking Plaintiff's demand for civil penalties of $25,000 per day against Defendants, and striking Plaintiff's first claim for relief for strict liability under 33 U.S.C. § 408 ("§ 408") against Tidewater and the Bank *in personam*. Defendants have also moved (# 21) for partial summary judgment (1) dismissing Plaintiff's claim for negligence against them, and (2) dismissing all claims under the Rivers and Harbors Act ("the Act"), 33 U.S.C. §§ 401 *et seq.*, against Barge 166, Barge 71, and The Pioneer (collectively, "the Barges"), leaving only Plaintiff's claim against Sundial for trial. Based on the reasons set forth below, the Bank and Tidewater's motion (# 13) for partial summary judgment should be GRANTED in part and DENIED in part. Defendants' second motion (# 21) for partial summary judgment

should be GRANTED in part and DENIED in part.

### Background

On February 28, 2008, Sundial, the fuel barge The Pioneer, and the Tidewater grain Barges 166 and 71 were transiting up bound through the John Day Dam Navigation Lock on the Columbia River (Comp. ¶ 35.) At all material times, Sundial and the Barges were a flotilla and/or fleet under the control of Sundial and her owners, operators, managers, officers and crews.[1] (Compl. ¶ 36.) During the Vessels rise in the locks, the Sundial and the Barges moved forward, causing the push knees of the Barges to allide with the upstream lock wall causing extensive damage to the gate and ancillary equipment. (Compl. ¶ 37.) The cost to Plaintiff to repair the damage to the navigation lock caused by Defendants totaled in excess of $4,943,090. (Compl. ¶ 38.) The allision between the Barges and the lock wall was caused, *inter alia*, by the failure of Sundial's crew to maintain a proper lookout so that action could have been taken to avoid the allision once the mooring lines parted. (Opp'n Mot. Partial Summ. J. ("Opp'n Mot.") at 8.)

On February 23, 2011, Plaintiff filed this action against Defendants seeking to recover for the damages to the upstream lock gate pursuant to the provisions of §§ 408 and 412. (Compl. ¶¶ 39–48.) Plaintiff contends that under § 411, Defendants are strictly liable to them for the damages to the upstream lock gate, which was caused by Defendants' negligence.[2] (Compl. ¶¶ 43–44, 48–49.) Specifically, Plaintiff claims that Defendants are liable

---

1. Sundial, Barge 166, Barge 71, and The Pioneer (collectively, "the Vessels").

2. Plaintiff's third and final cause of action is brought against Defendants and states, "[t]he allision and consequential damages set forth

herein were not caused or contributed to by the United States, its officers, agents or employees of said lock, but was caused solely by the fault and negligence of" the Bank and Tidewater, their respective agents, officers, employees and Vessels. (Compl. ¶ 49.)

to pay the damages they incurred in repairing the navigation lock, plus interest, as well as a penalty, pursuant to § 411, of not more than $25,000 per day. (Compl. ¶¶ 43–44, 48.) The Bank and Tidewater filed their motion for partial summary judgment on June 17, 2011, while Defendants filed the second motion for partial summary judgment on August 5, 2011.

## Legal Standard

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.,* 343 F.3d 1107, 1112 (9th Cir.2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).

## Discussion

### I. The Bank and Tidewater's Motion for Partial Summary Judgment

#### A. The Bank's Liability

The Bank argues that all claims against them should be dismissed because, as Plaintiff alleges, Tidewater was the bareboat charterer and owner *pro hac vice* of Sundial. (Defs.' Mem. Supp. ("Defs.' Mem.") at 5.) In support of its position, the Bank has submitted the declaration of John Pigott ("Pigott"), who is currently Tidewater's Assistant to the President. (Decl. John Pigott ¶ 2.) According to Pigott, the arrangement between Tidewater and the Bank, in regard to Sundial, was strictly a financial one. (Decl. John Pigott ¶ 5.) That is, it was a pure sale and lease back arrangement that had no provisions for the Bank to participate in the operational control of the vessel. (Decl. John

Pigott ¶ 5.) Pigott has attached to his declaration a 2006 Bareboat Charter between Tidewater and the Bank, which covers several vessels, including Sundial. (Decl. John Pigott Ex. A.) In keeping with the rights and obligations of the Bareboat Charter, the Bank had no involvement in directing the operations or otherwise controlling the activities of Sundial; rather, Tidewater retained all right to control and exercised actual control over Sundial. (Decl. John Pigott ¶ 7.)

 It is well settled "in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner pro hac vice." *Reed v. S.S. Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), *reh'g denied*, 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101 (1963), *superseded by statute on other grounds, Kelly v. Pittsburgh & Conneaut Dock. Co.*, 900 F.2d 89, 93 (6th Cir.1990). In a bareboat contract:

> [F]ull possession and control of the vessel are delivered up to the charterer for a period of time. The ship is then directed by its Master and manned by his crew; it makes his voyages and carries the cargo he chooses. Services performed on board the ship are primarily for his benefit.

*Id.* In essence, a bareboat charter is "tantamount to, though just short of, an outright transfer of ownership." *Tidewater Barge Lines, Inc. v. The Port of Lewiston, et al.*, No. 03–CV–1225–ST, 2005 WL 3992463, at *7 (D.Or. Oct. 21, 2005) (quoting *Guzman v. Pichirilo*, 369 U.S. 698, 700, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962)).

Here, Plaintiff has conceded the Bank's position regarding their liability by stating:

> [T]he United States is satisfied that a true bareboat charter exists between [the Bank] and Tidewater covering the [Sundial]. Accordingly, the United States does not oppose defendants' mo-

tion as it pertains solely to the liability of [the Bank.]

(Opp'n Mot. at 6 n. 1.)

In short, the parties stipulation and controlling case law demonstrate that the Bank is absolved of liability in this instance based on their bareboat charter with Tidewater. Accordingly, the Bank should be dismissed from this action.

### B. Tidewater's Liability

#### 1. The Applicable Statutes

The applicable provisions of the Act, §§ 408, 409, 411, and 412, provide in pertinent part:

> It shall not be lawful for any person or persons to ... alter, deface, destroy, move, injure ... or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States ... for the preservation and improvement of any of its navigable waters or to prevent floods ...

33 U.S.C. § 408 (2007).

> It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to sink, or permit to cause to be sunk vessels or other craft in navigable channels ... **and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently[.]**

33 U.S.C. § 409 (2007) (emphasis added).

> Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of section 407, 408, 409, 414, and 415 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of up

to $25,000 per day, or by imprisonment[.]

33 U.S.C. § 411 (2007).

And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of damages done by said boat, vessel, scow, raft, or other craft ... and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C. § 412 (2007).

## 2. *In Personam* Liability Under §§ 408 and 412

Tidewater contends that § 408 of the Act does not allow for an *in personam* remedy for damage to the public work. (Defs.' Mem. at 6.) Rather, Tidewater argues that the remedy authorized by the Act is limited to an *in rem* remedy against the vessel involved, therefore, Plaintiff's *in personam* claims should be dismissed as a matter of law. (Defs.' Mem. at 6.) Tidewater claims there is no controlling precedent on this issue and urges the court to adopt the reasoning articulated by the Fifth Circuit in *Barnacle Marine Mgmt. Inc. v. United States*, 233 F.3d 865 (5th Cir.2000). (Defs.' Mem. at 7.)

In *Barnacle*, the court addressed whether §§ 408 and 412 create an implied *in personam* remedy for the United States against the owner of a vessel that damages a public work. *Id.* at 867. *Barnacle* concluded that, "the plain language of § 408, § 411, and § 412 does not give the United

States a civil *in personam* remedy against a violator of § 408." *Id.* 870. In so holding, *Barnacle* recognized a critical distinction between § 408 and § 409, *e.g.*, that § 409 "imposes a duty on the owner, operator, or lessee of a vessel sunk in a navigable channel to mark and remove the vessel," whereas § 408 "makes it illegal for any person to damage or impair a public work used in aid of navigation, *but does not impose a duty upon any person to repair the public work.*" *Id.* (emphasis added). Based on this "language peculiar to § 409," *Barnacle* found the Supreme Court's decision in *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), did not control in implying an *in personam* remedy in favor of the United States against the vessel owner because:

> [*Wyandotte*] observed that § 409 created a duty on the owner of the sunken vessel to remove it. This duty triggered the right of the United States to a declaratory judgment directing the vessel owner to remove the wreck.... [Section] 408 does not give the United States the right to a declaratory order requiring the person responsible for damaging or impairing a public work to repair the work, *Wyandotte's* reasons for implying an *in personam* remedy under § 409 [thus] do not apply in [a] § 408 case[, which] ... is consistent with a number of recent Supreme Court decisions holding that we should be reluctant to imply a remedy broader than Congress expressly provided.

*Barnacle*, 233 F.3d at 870 (citations omitted).[3]

---

3. *Barnacle* also realized that their decision, declining to imply an *in personam* remedy under § 408, was in conflict with the Sixth Circuit's decision in *Hines, Inc. v. United States*, 551 F.2d 717 (6th Cir.1977). *Id.* at

870. "In *Hines*, the Sixth Circuit, with very little analysis, held that *Wyandotte* controlled. For the reasons stated above, we respectfully disagree." *Id.* (internal citation omitted).

Tidewater also points the court to *United States v. Ohio Valley Company, Inc.*, 510 F.2d 1184 (7th Cir.1975). (Defs.' Mem. at 9.) In *Ohio Valley*, the primary issue on appeal was whether the defendant-vessel was strictly liable for all of the damage it caused to property of the United States pursuant to §§ 408 and 412. *Id.* at 1184. Two barges in tow had collided with the land leaf of the lower gate of Ohio River Lock No. 47, causing damage to the gate. *Id.* at 1185. The United States brought the action in two counts: "Count I for negligence against the defendant-owner and the defendant-vessel and Count II against the vessel under §§ 408 and 412 (sections 14 and 16)." *Id.* *Ohio Valley* observed that the purpose of §§ 408 and 412 is "to provide funds for the replacement and maintenance of improvements built by the United States. This purpose is implemented through an absolute liability standard." *Id.* at 1188. Moreover, *Ohio Valley* recognized that §§ 408 and 412 "speak in terms of a vessel being liable for the damages caused to a United States work." *Id.* "Thus, the United States must proceed in rem under [§ 408] and the relevant part of [§ 412]. Indeed, the government at oral argument admitted that there could be no in personam liability under its Count II." *Id.*

Tidewater admits that there are cases which conclude that § 408 provides an *in personam* remedy, such as *Hines v. United States*, 551 F.2d 717 (6th Cir.1977). (Defs.' Mem. at 10.) However, Tidewater finds these decisions unpersuasive given their lack of statutory analysis. (Defs.' Mem. at 10.) According to Tidewater, "the courts that have engaged in critical review of the statutory language have determined that no *in personam* rights exist under Section 408. The cases hypothesizing otherwise simply conclude the issue without engaging in any reasoned evaluation." (Defs.' Mem. at 10.)

Plaintiff, on the other hand, contends that, contrary to Tidewater's assertion that there is an absence of authority regarding *in personam* liability under §§ 408 and 412, this court's decisions in *United States v. The Tug Rebel*, 893 F.Supp. 940 (D.Or. 1995), makes clear that the Act imposes strict *in personam* liability against an owner of a vessel that causes damage to navigational improvements. (Opp'n Mot. at 6.) The court disagrees with Plaintiff's characterization of *Tug Rebel*, most notably, because it did not specifically address the issue presently being litigated, that is, whether *in personam* liability may be imposed under §§ 408 and 412.

In *Tug Rebel*, a flotilla of barges propelled by the Tug Rebel entered the navigational lock at the John Day Dam. *Id.* at 940. The push knee of the forward barge had come up under the upstream gate, jamming the gate and causing extensive damage. *Id.* at 941. The United States filed an action against the Tug Rebel, the barges, and Tidewater Barge Lines, Inc. (collectively, "the defendants"), seeking to recover the damages to the upstream lock gate pursuant to §§ 408 and 409. *Id.* at 942. The United States contended that, under § 411, the defendants were strictly liable for the damages to the upstream lock gate caused by their negligence. *Id.* The United States sought an order of partial summary judgment on the grounds that Title 33 of the United States Code imposed strict liability on the defendants and precluded the application of the principles of comparative negligence used in general maritime law. *Id.* In granting the United States' motion, the *Tug Rebel* court adopted the reasoning of *Chotin Transp., Inc. v. United States*, 819 F.2d 1342 (6th Cir.1987), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 371 (1987), "and the holding of the Courts of Appeals in the Sixth, Seventh and Eighth Circuits that preclude the application of the general

provisions of comparative negligence to this action under the Rivers and Harbors Act." *Id. Tug Rebel* did not explicitly discuss nor rule on whether *in personam* liability could be imposed under § 408.

According to Plaintiff, the following cases have also held that a § 408 imposes *in personam* liability on a vessel owner: *Hines v. United States,* 551 F.2d 717 (6th Cir.1977); *United States v. Capital Sand Co., Inc.,* 466 F.3d 655 (8th Cir.2006); *United States v. Republic Marine, Inc.,* 829 F.2d 1399 (7th Cir.1987); *United States v. Commercial Am. Barge Line Co.,* 424 F.Supp. 453 (E.D.Mo.1977); and *In re Complaint of Walker's Midstream Fuel & Serv. Co.,* 636 F.Supp. 339 (W.D.Ky.1986). The court finds Plaintiff's reliance on the aforementioned line of cases unavailing.

In summarizing the proceedings before the district court, *Republic Marine* noted that the United States brought suit *in rem* against the tow boat M/V C.R. Clements and Barge CCT–124 and *in personam* against the owner of the tow boat, Republic Marine, and Conticarriers, as owner of the barge. *Republic Marine,* 829 F.2d at 1400. The suit was premised on §§ 408 and 412, however, the district court only "held the *in rem* defendants liable under section 408 and 412 for the $29,944.41 claimed as the cost of repairs to the [lock] wall[.]" *Id.* at 1401. On appeal, *Republic Marine* was primarily concerned with "whether the strict liability provisions of 33 U.S.C. §§ 408 and 412 require that a vessel be held liable for damage to a lock wall even though the government may have been the sole cause of the damage." *Id.* at 1400. *Republic Marine* is clearly not on point.

In *Capital Sand,* the United States brought suit in admiralty against Capital Sand Co., Inc. ("Capital Sand") and the M/V Jamie Leigh (collectively, "Defendants") to recover the cost of repairs to a lock and gate on the Mississippi River. *Capital Sand,* 466 F.3d at 657. Capital Sand was the owner of the M/V Jamie Leigh. *Id.* at 657. In the district court, judgment was entered in favor of the United States and against Defendants in the amount of $280,545.06, along with prejudgment interest at the rate of 2.25% annum, and a penalty of $1,000 under § 411. *Capital Sand,* No. 4:03CV6623NL, 2005 WL 1668141, at *9 (E.D.Mo. July 18, 2005). Defendants appealed, "challenging only the district court's award of $98,814.69 in overhead expenses as part of the total damage award." *Capital Sand,* 466 F.3d at 658. While Capital Sand was found to be liable to the United States, along with the M/V Jamie Leigh, the Eighth Circuit never specifically addressed *in personam* versus *in rem* liability under § 408, nor does the procedural history demonstrate that Defendants raised the question.[4]

In *Barge Line,* the United States brought suit against American Commercial Barge Line Company ("American"), the owner and operator of the M/V Jack D. Wofford and Barge ACBL 2748, which collided with a lock gate on the Mississippi River. *Barge Line,* 424 F.Supp. at 455. The district court determined that the defendant vessels violated § 408 and, since the collision amounted to negligence, American was liable for the resulting damages. *Id.* The United States also sought recovery of § 411's statutory penalty for violation of §§ 408 and 412, and the court

4. Capital Sand did attempt to argue that a bareboat charter existed with Jefferson City River Terminal, Inc. thereby barring any *in personam claims* against them arising out of the charterer's operation of the vessel. *Capital Sand,* 2005 WL 1668141, at *1. During the bench trial, however, no testimony was put forth regarding any evidence that the M/V Jamie Leigh was under a bareboat charter. *Id.*

assessed "a penalty of $500.00 against each of the offending vessels." *Id.* at 456. Judgement was ultimately entered in the United States's favor against American "in the amount of $87,568.77 with interest, and against each of defendant vessels in the amount of $500.00." *Id.* Nowhere within the *Barge Line* decision did the court specifically address *in personam* liability under § 408. I also note that, in finding American liable for the damages resulting from the negligent collision, *Barge Line* cited *Brown & Root Marine Operators, Inc. v. Zapata Off–Shore Co.*, 377 F.2d 724 (5th Cir.1967), which generally held that Brown & Root Marine Operators, Inc., must surrender three vessels to cover damages resulting from their negligence. *Id.* 726–27. Because *Barge Line* did not analyze *in personam* liability, it's entitled to little if any weight here.

In *Walker's Midstream*, the United States claimed that the M/V Robert Daron, a river towboat, and its owner, Walker's Midstream Fuel and Service Company ("Walker's Midstream"), were liable under the Act "for damages to the Smithland Locks and Dam and for sinking barges in a navigable channel and otherwise obstructing navigation on the Ohio River." *Walker's Midstream*, 636 F.Supp. at 346. The district court concluded that:

> Such damage constitutes a violation of § 408. In keeping with the combined purpose of § 408 and § 412, which is to provide funds for the repairs and maintenance of government works damaged by vessels plying the nation's navigable waterways, it is well settled that liability under the Rivers and Harbors Act is not subject to limitation on the basis of the Limitation of Liability Act, 46 U.S.C. § 183(a). Consequently, the damages assessed against the DARON for viola-

tion of § 408 will not be limited to the vessel's stipulated value.

*Id.* at 346–47 (citation omitted). Having found the United State partially responsible for the accident at the Smithland Locks and Dam, Walker's Midstream was required to "pay no more than 50% of the costs of repairing the locks and dam." *Id.* at 347. While *Walker's Midstream* found *in personam* liability, it did so with no analysis to support the conclusion.

*Hines* was an admiralty case involving an Ohio River tug that had three barges in tow, two of which were loaded with gasoline. *Hines*, 551 F.2d at 719. The tug broke loose from the barges amidst strong water current, and two of the barges struck a government dam and locks, caught fire and sank. *Id. Hines* was primarily concerned with addressing a conflict between two statutes, namely, the Limitation of Liability Act, adopted in 1851, 46 U.S.C. § 181 *et seq.*, and the Act. *Id.* at 718. Nearly four straight pages of the *Hines* decision was devoted to quotation of *Wyandotte*. *See id.* at 720–24. And, the court did state that the same logic which applies to § 409[5] claims could apply just as well to the government's claims relating to damages occasioned to the lock and dam, representing the sum of $2,200,000. *Id.* at 724. While *Hines* is favorable to Plaintiff's position, *in personam* liability under § 408 was apparently not the Sixth Circuit's principle focus, which likely explains *Hines's* limited review of the matter and the weight *Barnacle* accorded *Hines* in rendering its decision.

Next, Plaintiff contends that recognizing an *in personam* right of action under § 408 is consistent with an implied right to an *in personam* remedy under the Act, as recognized by the Supreme Court in *Wyandotte*. (Opp'n Mot. at 11.) Plaintiff

---

5. Section 409 is often referred to as the Wreck Act. *See id.* at 723 ("Benedict on Admiralty quotes the Wreck Act (33 U.S.C. s 409[.])")

also cites *Texas & Pac. Ry. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916), for the "long adhered to common law principle" that:

> A disregard of the command of [a] statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law.

(Opp'n Mot. at 11.)

The Court of Appeals in *Gov't of Guam v. Am. President Lines,* 28 F.3d 142 (D.C.Cir.1994), made the pertinent observation that, "the Supreme Court made clear its shift in emphasis from its prior standard to evidence of congressional intent to imply a private cause of action." *Id.* at 148. Thus, "*Wyandotte* ... and ... *Rigsby,* indicating that a statutory provision for an express remedy enhanced the possibility that other private causes of action would be inferred, are irrelevant in light of the shift in the Supreme Court's position." *Id.* at 149 n. 9. Similarly, as Tidewater appropriately points out, in evaluating whether a remedy should be implied, the Supreme Court in *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989), stated:

> The ultimate issue is whether Congress intended to create a private cause of action[.] Unless such congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist. **It is [ ] an elemental canon of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. In such cases, in the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.**

*Id.* at 532–33, 109 S.Ct. 1282 (internal citation and quotation marks omitted) (emphasis added).

■ *Wyandotte* demonstrates that the Supreme Court has held that there is an implied *in personam* remedy under § 409 of the Act. Nevertheless, given the Court's emphasis on congressional intent, and its reluctance to provide remedies in addition to those expressed by statute, I find Plaintiff's reliance on *Wyandotte* and the analysis upon which it was predicated, unpersuasive on this matter. Moreover, as in *Barnacle,* I find that "*Wyandotte* does not control this § 408 case because the *Wyandotte* Court expressly relied on language peculiar to § 409 in implying an *in personam* remedy in favor of the United States against the vessel owner[,]" *e.g.,* the duty on the owner of the sunken vessel to remove it. *Barnacle,* 233 F.3d at 870.

In short, the court is persuaded by the *Barnacle* decision and, accordingly, adopts its analysis in regards to *in personam* liability under §§ 408 and 412. The plain language of §§ 408 and 412 do "not give the United States a civil *in personam* remedy against a violator of § 408." *Barnacle,* 233 F.3d at 870. "Because § 408 does not give the United States the right to a declaratory order requiring the person responsible for damaging or impairing a public work to repair the work, *Wyandotte's* reasons for implying an *in personam* remedy under § 409 do not apply in this § 408 case." *Id.* Such a holding is in accordance with a number of "recent Supreme Court decisions holding that we should be reluctant to imply a remedy broader than Congress expressly provided." *Id.*

### a. *Maryland Marine*

After oral argument, the parties were given the opportunity to submit supple-

mental briefing regarding the decision recently rendered by the United States District Court for the Northern District of Alabama in *Maryland Marine v. United States,* Case No. 5:08–cv–1337–KOB (N.D. Ala. filed Sept. 12, 2011).

There, three barges owned and operated by Maryland Marine, Inc. ("Maryland Marine") became wedged under an upstream lift gate. *Maryland Marine v. United States,* Case No. 5:08–cv–1337–KOB, slip op. at 1 (N.D. Ala. filed Sept. 12, 2011). The incident resulted in severe damage to the lift gate and the lockwall, requiring repairs costing $5,093,853.86. *Id.* at 2. Maryland Marine commenced the action, alleging that the United States was liable under the Suits in Admiralty Act, 46 U.S.C. § 30901 et seq., because its barge was damaged by the allegedly negligent operation of Wilson Locks by the Army Corps of Engineers. *Id.* The United States counterclaimed, both *in rem* and *in personam,* pursuant to the Act §§ 408, 409, 411, and 412, for damage to the lift gate and lock wall. *Id.*

In evaluating whether *in personam* liability was available against Maryland Marine under §§ 408 and 412, the court recognized the split between the Fifth and Sixth Circuit on this issue, citing *Barnacle* and *Hines. Id.* at 4. *Maryland Marine* stated:

> Although 33 U.S.C. § 408 and 33 U.S.C. § 409 differ slightly in responsibilities imparted on the boat owners—section 409 explicitly imposes an affirmative duty on the boat owner to remove his sunken vessel, while section 408 imposes no affirmative duty—both are collectively part of the River and Harbors Act. Reasoning utilized in analyzing one section is appropriate in analyzing another.

*Id.* at 6. Relying on binding precedential authority which found an *in personam*

remedy available under § 409, *Maryland Marine* held that an *in personam* remedy was also available under § 408. *Id.*

I find the Fifth Circuit's decision in *Barnacle* more persuasive than the district court's decision in *Maryland Marine.* Although *Maryland Marine* recognized §§ 408 and 409 "differ slightly in responsibilities imparted on the boat owners," the court failed to take into account the importance of this distinction. In addition, *Maryland Marine* relied on several cases that pre-dated the Supreme Court's shift in emphasis from its prior standard, to searching for evidence of congressional intent when implying a private right of action. Simply put, while § 408 expressly provides an *in rem* remedy, there is an absence of strong indicia of contrary congressional intent indicating an additional *in personam* remedy.

Plaintiff makes much of the fact that *Maryland Marine* and the District of Oregon have relied on Sixth and Seventh Circuit precedent in interpreting the Act. (Pl.'s Supp. Br. at 5.) Accordingly, Plaintiff "respectfully requests that the Court, in the absence of binding Ninth Circuit authority, continue to look to the opinions of the Sixth and Seventh Circuits[.]" (Pl.'s Supp. Br. at 6.) However, amongst the decisions Plaintiff urges the court to find persuasive is *Ohio Valley* where "the government at oral argument admitted that there could be no in personam liability under its Count II", 510 F.2d at 1188, "against the vessel under the Rivers and Harbors Act, 33 U.S.C. ss 408, 412 (sections 14 and 16)." *Id.* at 1185. Declining to find an *in personam* remedy available under §§ 408 and 412 is therefore in accordance with *Ohio Valley.*

### b. Supplemental Admiralty Rule C(1)(b)

Lastly, Plaintiff claims that implying an *in personam* cause of action under § 408

is consistent with Supplemental Admiralty Rule C(1)(b) of the Federal Rules of Civil Procedure. (Opp'n Mot. at 12.) Supplemental Admiralty and Maritime Claims Rule ("Rule") C(1) provides:

(1) **When Available.** An action in rem may be brought:

(a) To enforce any maritime lien;

(b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

Statutory provisions exempting vessels or other property owned or possessed by or operated by or for the United States for arrest or seizure are not affected by this rule. When a statute so provides, an action against the United States or an instrumentality thereof may proceed on in rem principles.

Supplemental Admiralty and Maritime Claims Rule C(1), 28 U.S.C. (2000 Ed.).

The parties do not dispute whether Plaintiff may proceed *in rem* under § 412 of the Act, however, Plaintiff argues there is nothing within the Act's text explicitly denying them a right to proceed *in personam*. (Opp'n Mot. at 12.) Plaintiff suggests that, "[r]eading § 412 in conjunction with Supplemental Admiralty Rule (C)(1)(b) ... is consistent with the Supreme Court's holding that the United States may sue to protect its interests" and the Act's broad coverage. (Opp'n Mot. at 13.)

Defendants counter by claiming, "[t]o whatever extent [Plaintiff] claims that Supplemental Rule C(1) confers on it some substantive right, the government goes too far. The dearth of case law addressing such an argument suggests that is infrequently made," citing *Dowell Div. of Dow Chemical Co. v. Franconia Sea Transport, Ltd.*, 504 F.Supp. 579 (S.D.N.Y.1980), *aff'd*, 659 F.2d 1058 (2d Cir.1981), *cert. denied*, 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 249. (Defs.' Reply at 6.) In *Dowell*, the plaintiff contended that Rule C permits an action *in personam* as an alternative to an *in rem* action. *Id.* at 581. The court found:

Rule C merely states the general rule that, when a maritime lien attaches, the aggrieved party has the option of either pursuing an action in rem or seeking recovery from any party who is directly liable under some basis of substantive law in an in personam action, or both. Rule C does not itself create substantive liability where none would otherwise exist.

*Id.* According to the Committee that drafted Rule C, it "was designed to preserve the substance of former Admiralty Rules 13–18. Under those rules, in general, an action in rem may be brought to enforce any maritime lien, and no action in personam may be brought where the substantive law imposes no liability." *Id.* at 582 (quotation marks omitted).

*Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418 (5th Cir.1986), made the pertinent observation that, "[t]he maritime creditor may choose either remedy *if that remedy is available under the substantive law.*" *Id.* at 1421 (citing *Dowell*, 504 F.Supp. at 581) (emphasis added). Here, the court has determined that an *in personam* remedy is not available under §§ 408 and 412, or "the substantive law." The court therefore finds Plaintiff's reliance on Rule C(1) unavailing.

### 3. Civil Penalties Under § 411

In its first and second cause of action against Defendants, Plaintiff has requested

penalties pursuant § 411 "of not more than $25,000 per day." (Compl. ¶¶ 44, 48.) It is Defendants' contention that § 411 provides only for criminal penalties, as shown by the plain language of the statute. (Defs.' Mem. at 11.) Defendants claim that other courts have consistently characterized § 411 as criminal in nature, citing *Univ. of Texas Med. Branch of Galveston v. United States,* 557 F.2d 438 (5th Cir. 1977)[6] and *In re S. Scrap Material Co., LLC,* No. 06–1860, 2007 WL 1234995 (E.D.La. Apr. 26, 2007).[7] (Defs.' Mem. at 11.)

Defendants point out that other courts have evaluated the character of § 411 in the context of qui tam actions relating to the Refuse Act under Section 407, such as *Bass Anglers Sportsman's Soc'y of Am. v. U.S. Plywood–Champion Papers, Inc.,* 324 F.Supp. 302 (S.D.Tex.1971). (Defs.' Mem. at 11.) In *Bass Anglers,* the court stated:

> Clearly, §§ 407 and 411 are solely criminal statutes. Section 411 makes the acts proscribed in § 407 'misdemeanor' offenses and provides that upon 'conviction' of such offense the convicted person or corporation shall be 'punished' by 'fine' or 'imprisonment.' Nothing in these statutes intimates that a civil enforcement procedure is authorized. Under these circumstances, these sections cannot be enforced by a civil action.

*Id.* at 305 (citations omitted).[8]

By contrast, Plaintiff says that, "[t]he Ninth Circuit has ruled that the Government may pursue civil penalties against a vessel that violates § 408 of the River and Harbors Act[,]" citing *United States v. Matson Nav., Co.,* 201 F.2d 610 (9th Cir. 1953). (Opp'n Mot. at 13.) Plaintiff claims that *Matson* is controlling precedent and is consistent with the Seventh Circuit's holding in *United States v. Cent. Soya, Inc.,* 697 F.2d 165 (7th Cir.1982). (Opp'n Mot. at 13.)

In *Matson,* the United States sought to invoke the admiralty jurisdiction of the United States District Court for the District of Oregon by, amongst other things, libeling a tug *in rem* to recover the damages and statutory penalty provided by the Rivers and Harbors Act, 33 U.S.C. § 407 *et seq. Matson,* 201 F.2d at 612. The district court found it had no admiralty jurisdiction to entertain a claim for damages and penalties under § 411 of the Act, and the United States appealed. *Id.* at 613. The Ninth Circuit held that, "[t]he government's second cause of action in which the Tug was libeled in rem for damages and penalties under the Rivers and Harbors Act of 1899, Title 33 U.S.C. § 407 *et seq.,* for injuries to the dike is [] within the admiralty jurisdiction of the district court[.]" *Id.* at 618. *Matson* nor its subsequent history seem to endorse the availability of civil penalties under § 411, however. I therefore agree with Defendants that *Matson* provides little, if any, guidance on this matter.

In *Central Soya,* a barge had broke loose from the place where it had been moored, floated down river and caused

---

**6.** *See Univ. of Texas Med. Branch,* 557 F.2d at 444 ("33 U.S.C. s 411, provides criminal penalties, including fine or imprisonment[.]")

**7.** *See In re S. Scrap Material Co., LLC,* 2007 WL 1234995, at *1 ("Criminal sanctions ... are provided by Section 411, including both fines and imprisonment.")

**8.** Defendants also cite *Gerbing v. I.T. T. Rayonier, Inc.,* 332 F.Supp. 309 (M.D.Fla.1971); *Anderson on Behalf of U.S. v. Norfolk & W. Ry.,* 349 F.Supp. 121 (W.D.Va.1972); *Mitchell v. Tenneco Chemicals, Inc.,* 331 F.Supp. 1031 (D.S.C.1971); and *Conn. Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81 (2d Cir. 1972), which generally made observations similar to that of *Bass Anglers.*

extensive damage to a pier and lock. *Cent. Soya*, 697 F.2d at 166. The United States brought its second count under §§ 408 and 412 against the *in rem* defendant barge. *Id.* "This count sought damages of $141,408.83 and a pecuniary penalty of not more than $2,500.00 and not less than $500.00." *Id.* The Seventh Circuit found that, although the Government's suit for damages against the *in rem* defendants was barred by 28 U.S.C. § 2415(b), that section did not apply the penalties or fines, which were not time-barred under 28 U.S.C. § 2462. *Id.* at 169. Accordingly, the district court was reversed "[t]o the extent that the Government's cause of action sought enforcement of a civil penalty as provided by 33 U.S.C. § 412[.]" *Id.* at 170.

*Central Soya* also stated, "[s]ection 411 of the Act provides for criminal penalties for any person or corporation violating § 408." *Id.* at 168. Section 411 "further provides that upon conviction, a violator shall be subject to a fine not exceeding $2,500.00 nor less than $500.00, or by imprisonment[.]" *Id.* According to the Seventh Circuit, Congress no doubt recognized the "inadequacy of these criminal penalties" by providing for further "civil remedies" in the Act, such as, "[a]nd any boat, vessel, * * * employed in violating any of the provisions of section 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of damage done by said boat, vessel[.]" *Id.* (quoting 33 U.S.C. § 412).

Finally, Plaintiff claims that, "[o]ther courts have also ruled that the United States may pursue civil penalties against a vessel that violates § 408[,]" citing *United States v. The Terry E. Buchanan*, 138 F.Supp. 754 (S.D.N.Y.1956) and *United States v. The M/V Martin*, 198 F.Supp. 171 (S.D.Ill.1961). (Opp'n Mot. at 14.) In *Buchanan*, the United States brought an action *in rem* against a tug and three barges (collectively, "Defendants"), alleging violation of § 408. *Buchanan*, 138 F.Supp. at 755. The United States claimed that Defendants were liable *in rem* for the pecuniary penalties set forth in § 411 and 412. *Id.* The court stated that, "[t]he statutes impose a *pecuniary penalty* against any vessel or other craft 'used or employed' in violation of the law, and the courts have construed this to impose a strict liability in rem upon such craft[.]" *Id.* (emphasis added).

Similarly, in *M/V Martin*, the United States filed a libel in two counts against M/V Martin and Barge MOS–101, for damages arising out of the alleged collision of the vessels with an Illinois River navigation beacon structure. *M/V Martin*, 198 F.Supp. at 172. The M/V Martin and Barge MOS–101 were deemed vessels used and employed within the meaning of § 412, which injured work built by the United States in violation of § 408. *Id.* at 176. Thus, the court held that the United States was entitled to recover a pecuniary penalty against "each of the respondent vessels" pursuant to § 412, "with reference to" §§ 408 and 411. *Id.*

When read in isolation, the language of § 411 seems to suggest that the fine and penalties prescribed are criminal in nature. As the *Roberts Plating* court recognized:

[T]he plain implication of the format of § 411, with its language of 'misdemeanor', 'on conviction', 'to conviction', 'fine' or 'imprisonment', 'fine and imprisonment', is that there must be a criminal proceeding, a conviction obtained as a result of that proceeding, and the imposition of a discretionary fine or sentence of imprisonment as punishment for the crime.

*Roberts Plating*, 457 F.2d at 85–86. However, in evaluating Plaintiff's requested pecuniary penalty, stemming from an alleged

violation of §§ 408 and 412, the court must consider § 411 in conjunction with § 412.

■ Section 412 unequivocally states that "any boat" or "vessel" that is "used or employed in violating" section 408 *"shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of damage done* by said boat, vessel[.]" 33 U.S.C. § 412 (2007) (emphasis added). The only pecuniary penalties specified under § 411 are "a fine of up to $25, 000 per day[.]" 33 U.S.C. § 411 (2007). Thus, I find the plain language of the statutes to suggest that the *in rem* defendants can be liable for the pecuniary penalties of up to $25,000 per day, and "in addition thereto for the damage done" to Plaintiff's public works. *See also Barge Line,* 424 F.Supp. at 456 ("Section 412 imposes the statutory penalties of s 411 upon any boat or vessel violating s 40[8]. . . . Accordingly, the Court assesses a penalty of $500.00 against each of the offending vessels."); *see also United States v. Tug Otto,* 296 F.Supp. 1130, 1134 (D.C.Tex.1967) (holding that a barge, "being a vessel used and employed in violation of 33 U.S.C. § 408, is liable to the United States for a pecuniary penalty of $500 under the provisions of" §§ 411 and 412, "and in addition thereto for the damage done[.]"), *aff'd.,* 404 F.2d 54 (5th Cir.1968).

In *Capital Sand,* the plaintiff sought "a statutory penalty of $25,000 under" § 411. *Capital Sand,* 2005 WL 1668141, at *8. The district court noted that, "[i]n lock damage cases, which are fairly common, a penalty of $500 to $1,000 is typically assessed against vessels that inadvertently strike a lock gate as occurred in this case." *Capital Sand,* 2005 WL 1668141, at *8 (collecting cases). Accordingly, a penalty of $1,000 was assessed against the defendants. *Id.* While this decision was ultimately affirmed by the Eighth Circuit, the district court assessed its penalty relying on cases that predated Congress's 1996

amendment to § 411. *See id.* (citing *Barge Line, Tug Otto,* and *M/V Martin* ). Specifically, in 1996, Congress amended § 411 by striking "not exceeding twenty-five hundred dollars nor less than five hundred dollars" and inserting "of up to $25,000 per day." Water Resources Development Act of 1996, Pub. L. No. 104–303, S. 640, 104th Cong. § 218(a)(2) (1996).

In short, it is clear that § 411's pecuniary penalties are commonly levied against vessels used and employed in violation of § 412, without the necessity of a criminal action. Any penalty assessed against vessels that strike a lock gate must be assessed under the express language of the statute in effect at the time of the collision. Prior to 1996, penalties were confined by a twenty-five hundred dollar cap, but that is no longer the case. Accordingly, a pecuniary penalty "of up to $25,000 per day" is now appropriate under § 411's current form.

## II. Defendants' Second Motion for Partial Summary Judgment

Defendants' second motion for partial summary judgment requests the court to enter an order (1) dismissing Plaintiff's claim for negligence against them, and (2) the claims under the Act against the Barges, leaving only the government's claim against Sundial for trial. (Defs.' Mem. Supp. Second Mot. Partial Summ. J. ("Defs.' Mem. Second") at 2.)

### A. Plaintiff's Common Law Negligence Claim

Defendants contend that the Act preempts the Plaintiff's third cause of action, which sets forth a common law negligence claim. (Defs.' Mem. Second Mot. at 4–20.) According to Plaintiff, pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(1)(A)(ii), the parties have agreed to stipulate to the dismissal of their third

cause of action. (Opp'n Second Mot. Partial Summ. J. ("Opp'n Second Mot.") at 1.) Plaintiff informs the court that:

> A draft of the proposed stipulation was sent to counsel for defendants on August 25 for review and approval. Once defendants have executed the stipulation, the United States will file it. Accordingly, based upon defendants' express agreement to stipulate to the dismissal of the third cause of action, the United States does not address defendants' argument in their motion concerning the general maritime cause of action.

(Opp'n Second Mot. at 1; Decl. Eric Kaufman–Cohen Ex. 1–2.) Nor will the court address Defendants' arguments pertaining to Plaintiff's common law negligence claim based on the parties' proposed stipulation and agreement that the claim is not viable.

## B. The Barges' Liability

The only remaining issue for the court's consideration is whether the Barges are liable for any damage to the lock under the Act. According to Plaintiff, "[i]t is important to note the relative position of the vessels, their configuration in the make up of the tow, and the actions and fault of each of the vessels with respect to the damage." (Opp'n Second Mot. at 3.) Apparently, the "tow" was made up with Sundial in the stern position since she was a "pusher" tug. (Opp'n Second Mot. at 3.) The Pioneer was made up immediately forward of Sundial. (Opp'n Second Mot. at 3.) Barge 166 and Barge 71 were tied off side-by-side and made up immediately forward of The Pioneer. (Opp'n Second Mot. at 3.) During the flotilla's rise in the lock, the forward of the two mooring lines attached to the starboard side of The Pioneer and a single mooring bit on the south side of the lock parted. (Opp'n Second Mot. at 3.) Sundial and the Barges moved forward in the lock, causing Barge 166 and 71 to allide with the upstream lock wall. (Opp'n Second Mot. at 3–4.) The result

was over $4,000,000 in damages to the lock. (Opp'n Second Mot. at 4.)

Since Sundial was propelling the Barges, Defendants claim the Barges were "passive instruments," that cannot be held liable under controlling case law. (Defs.' Mem. Second at 20.) Defendants rely primarily on *In re Seaspan Intern., Ltd.*, 172 F.Supp.2d 1314 (W.D.Wash.2001), wherein the Western District of Washington cited *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal*, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919), for the proposition that, "[i]f there is no contractual relationship between the injured and offending party, the accident is a pure tort and only 'offending vessels' will be included in the limitation fund." *In re Seaspan*, 172 F.Supp.2d at 1317.

Defendants next draw the court's attention to *In re S.D.S. Lumber Co. ex rel. Tug BRUCE M.*, CV–06–1423–KI, 2007 WL 3519419 (D.Or. Nov. 9, 2007). In *Tug BRUCE*, S.D.S. Lumber owned the tug BRUCE M, which ran the EMPRESS OF THE NORTH, a passenger vessel, aground on the Columbia River. *Id.* at *1. The tug BRUCE M was pushing barges up the river when "a wind caught the bin walls of the barges and caused the barges and the BRUCE M to be pushed into the middle of the channel and to occupy both sides of the channel." *Id.* The crew of the EMPRESS OF THE NORTH left the channel to avoid a collision, and subsequently ran aground. *Id.* Relying on *Liverpool*, S.D.S. Lumber argued that the barges were passive instruments of navigation tied to the offending vessel, the BRUCE M. *Id.* Judge King concluded that, "the barges tied to the BRUCE M were passive instruments of navigation whose values will not be included in the limitation fund." *Id.* at *3.

Conversely, Plaintiff first directs the court to a leading maritime treatise, *The Law of Tug, Tow, and Pilotage*, which stated:

> Notwithstanding the general rule that an innocent tow is not liable *in rem* for a collision with another vessel or object where it is brought into collision through the negligence of its tug, attention is directed to the series of cases imposing *in rem* liability on tows under 33 U.S.C. 408 and 33 U.S.C. 412 relating to government aids to navigation.

Alex L. Parks, *The Law of Tug, Tow, and Pilotage* 230 (2nd ed. 1982). In terms of case law, Plaintiff relies primarily on *Gilpin Construction Company v. United States, Oil Screw Vessel Inland Chief*, 1954 A.M.C. 191 (D.Or.1954), *Buchanan*, and *Tug Rebel*. According to Plaintiff, *Buchanan* is instructive as to why the "dominant mind" principle does not apply in this instance. (Opp'n Second Mot. at 5.) Defendants argue that, while *Buchanan* and *Inland Chief* discuss liability of a passive barge under § 408, § 411, and § 412, they "are non-binding district court cases decided more than fifty years ago—before the more modern progeny of the Supreme Court's *Liverpool* case." (Defs.' Reply Supp. Second Mot. Partial Summ. J. at 3.)

In *Buchanan*, the owner of the barges claimed that, "these were 'dumb barges' under the dominance and control of the tug, and that they could not be guilty of the violation in question[,]" *i.e.*, violating § 408 and liable in rem for the pecuniary penalties set forth in § 411 and § 412. *Buchanan*, 138 F.Supp. at 755. The owner cited many cases in support of the proposition that a "dumb barge" cannot be held liable in rem for damages caused by a collision between the barge and another vessel or other structure. *Id.* The court found these cases inapposite because "they all involved situations where culpable negligence or intent was necessary for recovery, and such is not the case insofar as these statutes are concerned." *Id.* Quoting from § 412, the court noted that, "[t]hese statutes impose a pecuniary penalty against any vessel or other craft 'used or employed' in violation of the law, and the courts have construed this to impose a strict liability in rem upon such craft regardless of the negligence or intent of the owners or masters." *Id.* In sum, "[t]he fact that the barges may be able to implead the tug and make it liable for the penalties imposed ... [did] not prevent the government from libeling the barges in [such a] manner." *Id.* at 756.[9]

Plaintiff next contends that, under the "flotilla doctrine," the Barges and Sundial are liable for the damage to the navigation lock. (Opp'n Second Mot. at 8.) The crux of Plaintiff's position is based upon the Vessels being owned by Tidewater, while engaged in a common enterprise, and under the single command of Sundial's master. (Opp'n Second Mot. at 9.) In support of this claim, Plaintiff cites the following cases: *Cenac Towing Co., Inc. v. Terra Resources, Inc.*, 734 F.2d 251, 254 (5th Cir.1984) (finding the record insufficient to determine whether the flotilla doctrine should be invoked, although noting that, "[t]his court has applied the flotilla doctrine to require the tender of all the vessels in a flotilla where all such vessels were not only owned by the same person, but were also both engaged in a common en-

---

**9.** The *Buchanan* court also recognized that, in *Inland Chief*, a District of Oregon case, the rule of strict liability had been applied "to a dredge which damaged an overhead flood control aid solely because the captain of the tug towing the dredge failed to lower the dredge's boom." *Id.* at 756. Although *Inland Chief* found sole fault rested with the tug, it still assessed the statutory *in rem* penalty against the dredge despite its lack of guilt, or the ultimate liability of the tug. *Id.*

terprise and under a single command."); *Valley Line Co. v. Ryan,* 771 F.2d 366, 376 (8th Cir.1985) (finding the flotilla rule inapplicable, but stating, "[u]nder the flotilla doctrine, the value of all the vessels involved in the completion or performance of a contract must be surrendered ... when those vessels are: subject to common ownership; engaged in a single enterprise; and under a single command."); and *Complaint of Tom–Mac, Inc.,* 76 F.3d 678, 684 (5th Cir.1996) (noting, in dicta, that, "[w]here vessels are owned by the same person, engaged in a common enterprise, and under a single command, this Court has applied the 'flotilla' doctrine' to require ... the owner's tender of all of the vessels in the flotilla, or the value thereof, pending resolution of the claims.")

As established in *Liverpool,* when the libel is an injury to a ship, or third party, in no way related to the flotilla, it is pure tort. *In re Midland Enters., Inc.,* 296 F.Supp. 1356, 1360 (S.D.Ohio 1968). "In its simplest form it is stated that, in a pure tort situation—i.e. one in which there is no contractual relationship between the offender and the person or persons injured—then, the 'offending vessel' is the one which really caused the damage (Liverpool)." *Id.*

The flotilla rule, on the other hand, had its genesis in *Sacramento Navigation Co. v. Salz,* 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927), where Sacramento Navigation Company ("petitioner") had contracted with E. Salz & Son ("respondent") to transport a quantity of barley. *Id.* 327, 47 S.Ct. 368. Petitioner was a common carrier that owned and operated a barge, which was not equipped with a motive power, and a steamer. *Id.* In the course of transporting the barley, the barge came into collision with a British ship. *Id.* All the barley was lost due to the steamer's negligence. *Id.* The Supreme Court determined that the petitioner's liability included the value of its steamer and barge because they were contractually bound, and both vessels were needed for execution of the contract. *Id.* at 332, 47 S.Ct. 368. Justice Sutherland distinguished *Liverpool* by stating, "[t]here the libel was for an injury to a ship in no way related to the flotilla. It was pure tort ... no contractual obligations were involved; and the simply inquiry was, What constituted the 'offending vessel'? Here we must ask, What constituted the vessel by which a contract of transportation was to be effected? a very different question." *Id.* Moreover, if "the British ship, which here was struck by the barge, were suing to recover damages, and a limitation of liability were sought by the owner of the tug and barge, the *Liverpool* Case would be in point. But the present libel is for a loss of cargo[.]" *Id.* (emphasis added).

Here, at first blush, this case would seem to be pure tort since there is no contractual relationship between Defendants, the offender, and the United States, the injured party. The court would be remiss, however, if it simply disposed of this matter based on the existence or nonexistence of a contract, when Congress has enacted statutes that govern proceedings by the United States for damage to its public works. That said, in the court's view, the critical distinction is not whether this a pure tort situation nor whether the flotilla rule applies, but who is the claimant. When the claimant is the United States, there is specific language in the governing statutes which renders cases involving pier workers (*Seaspan* ), companies that had contracted for the transportation of goods (*Sacramento Navigation* ), the owner's of a passenger vessel (*Tug BRUCE* ), or the deckhand on a tugboat (*Valley Line* ), distinguishable from the case at bar.

*Buchanan* recognized the aforementioned distinction in finding pure tort cases inapposite because "they all involved situations where culpable negligence or intent was necessary for recovery, and such is not the case insofar as these statutes are concerned." *Buchanan,* 138 F.Supp. at 755. In cases brought by the United States for damage to its public works, § 412 "impose[s] a pecuniary penalty against *any vessel or other craft 'used or employed'* in violation of the law, and the courts have construed this to impose a strict liability in rem upon such craft regardless of the negligence or intent of the owners or masters." *Id.* (emphasis added). What you have in this instance is a tug, two grain barges, and a fuel barge, all of which were owned by Tidewater and which were engaged in a common enterprise. The court would therefore be hard-pressed to say that the Barges were not "used or employed" in violating the Act's statutory provisions. This interpretation accords not only with the plain language of the statute, but the purpose of the combined effect of §§ 408 and 412, which "is to provide funds for the replacement and maintenance of improvements built by the United States." *Ohio Valley,* 510 F.2d at 1188.

In short, the Barges may not avail themselves of *Liverpool's* protection because, as in *Buchanan,* the government is not prevented from libeling the Barges in this manner. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claims against the Barges should be denied.

### Conclusion

For the reasons stated above, the Bank and Tidewater's motion (# 13) for partial summary judgment should be GRANTED in part and DENIED in part. Defendants' second motion (# 21) for partial summary judgment should be GRANTED in part and DENIED in part.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 27, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due February 13, 2012. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.